HEYE FARMS, INC., A NEBRASKA CORPORATION,
APPELLEE AND CROSS-APPELLANT, V.
STATE OF NEBRASKA, DEPARTMENT OF ROADS,
APPELLANT AND CROSS-APPELLEE.

558 N.W.2d 306

Filed January 31, 1997.   No. S-95-054.

Don Stenberg, Attorney General, and Robert G. Avey for appellant.

Otto H. Wellensiek, of Wellensiek Law Offices, for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ.

CAPORALE, J.

# I. STATEMENT OF CASE

In this eminent domain action, the district court granted a new trial to the plaintiff-appellee condemnee, Heye Farms, Inc., which had obtained a verdict and judgment in its favor against the defendant-appellant condemner, State of Nebraska, Department of Roads, in the amount of $56,635. The State appealed to the Nebraska Court of Appeals, asserting that the district court abused its discretion in ordering a new trial in that, in summary, the district court erroneously concluded that it had (1) improperly instructed the jury concerning the matter of severance damages and (2) wrongly struck certain of Heye Farms' evidence. Heye Farms then cross-appealed, asserting that the district court erred in (1) refusing to instruct the jury on severance damages in accordance with the instruction Heye Farms tendered and (2) failing to strike certain of the State's evidence. Under our authority to regulate the caseloads of the Court of Appeals and this court, we, on our own motion, removed the matter to our docket. We now reverse, and remand with the direction that the verdict and judgment thereon be reinstated.

# II. SCOPE OF REVIEW

A motion for new trial is to be granted only when error prejudicial to the rights of the unsuccessful party has occurred, *Farmers & Merchants Bank v. Grams,* 250 Neb. 191, 548 N.W.2d 764 (1996); such a motion is addressed to the discretion of the trial court, whose decision will be upheld on appeal in the absence of an abuse of that discretion, *Menkens v. Finley, ante* p. 84, 555 N.W.2d 47 (1996).

# III. FACTS

Heye Farms raises corn, soybeans, wheat, and cattle. The State condemned 30.15 acres of Heye Farms' Otoe County land for the construction of a highway, leaving Heye Farms with 414.79 acres. The new highway cuts off the northwest quarter of the farm from the south half, blocking Heye Farms' access to the 98.4-acre northwest area. There is evidence that as a result, Heye Farms will have to haul cattle from the south portion of its land to the north portion by truck and, approximately 15 or 16

times per year, will have to drive an extra 3 miles each way to farm part of its land.

The crossing now used is subject to periodic flooding in wet years. Evidence suggests that correcting the field crossing problem would cost about $650. However, the parties stipulated that the State will construct a drainage ditch on both sides of the new highway for the purpose of carrying water from existing terraces and will make necessary corrections if the ditch overflows. The highway also boxed in a small area of farmland lying between the highway and the existing waterway. Evidence suggests that this will cause a problem, with terraces being too close to the highway, leaving too little room for harvesting vehicles to turn around. Moving the existing waterway and correcting the terrace would cost $1,020.

Craig Harris testified as an expert on behalf of Heye Farms. He determined the value of the farm before the taking by considering the sales of comparable land in the surrounding area. He initially testified that the value of the farm prior to the taking was $713,000 and that the value of the area taken was $45,000. He also testified that the value of the remainder before the taking was $668,000 and after the taking was $613,350, taking into account $1,950 for conservation work, making the total damages $99,650 ($45,000 for the land taken and $54,650 for damages to the remainder).

When asked how he determined the difference in value of the remainder before and after the taking, Harris stated, "I used a — an income approach, the valuation process that would either be a loss of income to the farm or an increase in expense and determined the value of the remainder." He explained further that the right-of-way cut off the water supply to the northwest quarter, thus diminishing the grazing land value. Establishing a new water source would cost $2,190 annually. Harris "capitalized" this expense at 6 percent because it is a recurring expense, and thus concluded that the total expense for establishing a new water source at the northwest quarter is $36,500. Harris also considered the additional labor and equipment required to haul grain to the bin site and valued it at $505. Again, Harris capitalized this expense at 6 percent, arriving at a total expense of $8,420.

The State moved to strike from Harris' opinion of the damages to the remainder the $36,500 and $8,420 amounts, arguing that these two figures are improperly based on an income approach. The district court sustained the State's motion to strike and advised the jury to disregard that testimony.

Harris then testified that based on his experience in the sale of severance property versus nonseverance property, every remaining acre was damaged in the amount of $125 by the severance, making the total value of the remainder of the subject property after the taking $611,500. Thus, in Harris' opinion, the revised damages to the remainder are $56,500 ($668,000 less $611,500). That, together with the value of the property taken ($45,000), makes the total revised damages $101,500.

Darrell Smith testified as an expert for the State. Using a comparable sales approach, he testified that the value of Heye Farms' land prior to the taking was $571,900. He further testified that the value of the property taken by the State is $32,953 and that the value of the remaining property before the taking was $538,947 and $529,364 after the taking, a difference of $9,583, making the total damages $42,536. In arriving at the amount of damages to the remainder, Smith considered the newly restricted access to a particular 98.4-acre area, increased difficulties in farming a particular 3.3-acre area (costing $2,723), easements on .27 acres, the need to erect a fence, the need for a new waterway (costing $1,275), and the need to level four terraces. Smith also testified that due to the parties' stipulation about the waterways, there will no longer be a problem with farming the 3.3-acre area; thus, $2,723 and $1,275 should be subtracted from his damages estimate. Therefore, Heye Farms' total damages, according to Smith's final estimate, are $38,538.

On cross-examination, Smith admitted that he was not familiar with Neb. Rev. Stat. § 39-1331 (Reissue 1993), which provides:

> Whenever the location, relocation, establishment, construction, or reconstruction of a highway causes the severance of real property, which is being used for farm or other agricultural purposes and title thereto is held under one owner, the department [of Roads] shall make provision for

crossing the highway from one tract to the other, or compensation for the severance of the tract shall be paid . . . .

Heye Farms then unsuccessfully moved to strike Smith's testimony because he made his appraisal without knowledge of § 39-1331. On redirect examination, Smith stated that in making his appraisal, he considered the fact that there was no access between the northwest quarter and the south quarters.

After the jury viewed the property, the district court instructed, in relevant part, as follows:

[Heye Farms] is entitled to recover:

1. The fair market value of the property taken . . . .

2. Any decrease in the fair market value of the remaining property, to the extent that the decrease was proximately caused by the taking . . . .

. . . .

The "fair market value" of a piece of property is the price that someone ready to sell, but not required to do so, would be willing to accept in payment for the property, and that someone ready to buy, but not required to do so, would be willing to pay for the property.

In determining fair market value you may consider uses to which the property has been put and uses to which it might reasonably be put in the immediate future.

. . . .

In arriving at the reduction in the fair and reasonable market value of the property remaining after the taking, you may consider . . . every non-speculative element of inconvenience, annoyance and disadvantage which the taking has caused the plaintiffs as the owners of the remainder and which would influence a purchaser's decision to buy the property or pay a certain amount for it.

. . . .

Whenever the location, relocation, establishment, construction, or reconstruction of a highway causes the severance of real property which is being used for farm or other agricultural purposes and the title is held under one owner, the Department of Roads shall make provision for crossing of the highway from one tract to the other or compensation for the severance of the tract shall be paid.

## IV. ANALYSIS OF STATE'S APPEAL

Ordinarily, it is more logical to deal with evidential issues prior to analyzing issues concerning a trial court's instructions to the jury. However, here, the analysis of the evidential issues requires an understanding of the law concerning severance damages. Since such a study is also required in dealing with the State's claim in regard to the district court's instructions to the jury, it is more efficient to address the instruction issues first, and we thus do so.

### 1. INSTRUCTIONS

The State contends that the district court abused its discretion in ordering a new trial based on the court's mistaken thought that it had erroneously instructed the jury. The district court concluded that it should have given more specific instructions on the elements to be considered in assessing severance damages.

We begin by noting that it is the duty of the trial court to instruct on the proper law of the case, and failure to do so constitutes prejudicial error. *Wilson v. Misko*, 244 Neb. 526, 508 N.W.2d 238 (1993). In determining whether such has been done, all the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating a reversal. *Traphagan v. Mid-America Traffic Marking, ante* p. 143, 555 N.W.2d 778 (1996); *Sedlak Aerial Spray v. Miller, ante* p. 45, 555 N.W.2d 32 (1996); *Hamernick v. Essex Dodge Ltd.*, 247 Neb. 392, 527 N.W.2d 196 (1995).

The measure of damages for partial takings of land is the market value of the land taken and the difference in the value of the remainder before and after the taking. *Lantis v. City of Omaha*, 237 Neb. 670, 467 N.W.2d 649 (1991). Neb. Rev. Stat. § 76-710.01 (Reissue 1996) provides:

> Where any condemner shall have taken or attempts to take property for public use, the damages for taking such property . . . shall include all compensable damages suffered by the condemnee including but not limited to reasonable severance damages and condemnee's abstracting

expenses. In determining the amount of such severance damages, account shall be taken, together with other relevant factors, of the economic effect, if any, caused by the severance therefrom of the part taken or sought to be taken upon the whole of such property as a going concern as it will be and remain after the severance. Any decrease or increase in the fair market value of real property prior to the date of valuation caused by the public improvement for which such property is acquired, or by the likelihood that the property would be acquired for such improvement, other than due to physical deterioration within the reasonable control of the owner, shall be disregarded in determining the compensation for the property.

In considering the effect of the severance on the market value of the remainder, account must be taken of all of the inconveniences caused by the severance as they might affect a prospective purchaser and the effect of the severance upon every available, reasonable, and probable future use of the property, as it relates to the market value of the remainder of the property considered as a unitary whole. *Pieper v. City of Scottsbluff*, 176 Neb. 561, 126 N.W.2d 865 (1964).

In *Rose v. City of Lincoln*, 234 Neb. 67, 449 N.W.2d 522 (1989), Rose claimed that the trial court had failed to adequately instruct the jury on loss of access damages. We wrote:

Although the court's instruction did not specifically refer to loss of access as a factor in Roses' damages, the jury was told to determine damages on the basis of an award which would "justly compensate" Roses in view of every "non-speculative element of inconvenience, annoyance, and disadvantage" which would "influence a purchaser's decision to buy [Roses'] property or pay a certain amount for it."

Under the circumstances, when the instructions given by the trial court are read conjunctively, especially in the light of the jury's viewing of Roses' real estate and the city's water main site, we find no prejudicial error in the trial court's refusal to give Roses' tendered instruction regarding loss of access as a factor affecting damages

recoverable by Roses in their inverse condemnation proceeding.

*Id.* at 75-76, 449 N.W.2d at 529.

In *Lansman v. State*, 177 Neb. 119, 128 N.W.2d 569 (1964), the state built a highway through Lansman's farm, dividing the land into two sections. Lansman and others testified as to the necessity and impossibility of getting cattle to cross the highway. Lansman contended that he would have to incur the additional expense of hauling his cattle back and forth as a result of the new highway. Lansman argued, on appeal, that the trial court improperly failed to include "the cost of access from one part of the land to the other" in the jury instructions. *Id.* at 127, 128 N.W.2d at 574. We held that

the jury viewed the premises and could see the condition that existed there with reference to getting back and forth between the two pieces of land. The jury obviously was apprised of all factors which tended to cause damage to the remainder of the plaintiffs' property, and rendered its judgment in accordance with the law relating to condemnation.

*Id.* at 128, 128 N.W.2d at 575. In reference to Lansman's argument that the trial court improperly failed to include the burden of additional fencing in the jury instructions, we stated that individual itemized damages

"are elements to be considered, not by adding them together item by item and allowing them, or by allowing such item or items as such, but, together with the amount of plaintiffs' land taken * * * such elements should be considered in determining the extent that, taken as a whole, defendant damaged plaintiffs' land by detracting from and reducing the market value thereof."

. . . " '. . . Nothing can be allowed for fence, as fence. The allowance should be for the depreciation of the land in consequence of the burden thus cast upon it. Evidence of the cost of suitable fencing is competent as affording a means of arriving at the extent of the burden.' [Citation omitted.]"

*Id.* at 128, 128 N.W.2d at 574-75. We held that the trial court fairly and correctly stated the law applicable under the evi-

dence; while the condemnee may testify to and the jury may consider itemized burdens, the trial court is not required to instruct the jury on each individual item making up the condemnee's damages.

Accordingly, the district court in the instant case adequately instructed the jury on severance damages, as set forth in part III above.

### 2. STRIKING OF EVIDENCE

The State next contends that the district court wrongly concluded it erred in striking Harris' testimony concerning the capitalized value of the additional costs required to haul grain and obtain a new source of water.

Before reaching the State's arguments in that regard, we address Heye Farms' contention that the State's objection was untimely and, thus, if for no other reason, that the evidence was improperly stricken. In so urging, Heye Farms relies on *Lincoln Branch, Inc. v. City of Lincoln*, 245 Neb. 272, 512 N.W.2d 379 (1994) (failure to object to admission of evidence in trial court precludes one from raising objection for first time on appeal). However, Heye Farms' reliance on *Lincoln Branch, Inc.* is misplaced.

The consideration of a belated motion to strike testimony, no objection having been previously made, is discretionary with the trial court. *Kohler v. Ford Motor Co.*, 187 Neb. 428, 191 N.W.2d 601 (1971); *Western Plastics Corp. v. Westinghouse Electric Corp.*, 184 Neb. 498, 169 N.W.2d 1 (1969). The procedural facts in the instant case are similar to those in *Western Plastics Corp., supra*, wherein we wrote:

It is the contention of Western Plastics that the failure of Westinghouse to object to the testimony of McCarty constituted a waiver of objections to it and that the trial court erred in sustaining the motion to strike. The cases cited by Western Plastics hold that a failure to object to the admission of evidence in the trial court precludes one from raising the objection for the first time on appeal. [Citations omitted.] But this is not the question before us. While there is a division in the authorities in other jurisdictions, we think the proper rule is: The entertainment of a belated

motion to strike testimony, no objection having been previously made thereto, is discretionary with the trial court. 184 Neb. at 507, 169 N.W.2d at 6.

Accordingly, the district court did not abuse its discretion in entertaining the State's motion.

We thus move on to the State's contention that the questioned testimony was properly stricken. When testifying as to the diminished value of Heye Farms' remainder property, Harris stated that he

consider . . . the effect that the right-of-way would have on cutting the northwest quarter section away from the rest of the farm. I had a loss of grazing land value and some additional labor and equipment expense that would be involved in increased travel and time of farming that northwest quarter . . . .

According to Harris:

The land north of the new right-of-way will be cut off from the main building site, and there is at this — at the present time is not a reliable water source on that northwest quarter.

And the process I used was to take the 146 acres of grazing land north of that right-of-way and a cost factor of $15 per acre for either renting additional stock land to replace that ground of the cost it would take to get that water source reestablished, additional labor for hauling, loading and checking the cattle. And when I multiplied the $15 per acre times 146 acres, came up with a value or an expenses [sic] of $2,190. That $2,190 of expense was capitalized at six percent to give a total value change of $36,500.

As for the additional expense in hauling grain, Harris testified that he

computed that on the basis of eight cents per bushel for 100 bushels per acre times 50 percent of the cropland acres north of that new right-of-way. That came to an expense of $505, again, capitalizing that at six percent, arrived at a value decrease of $8,420. And I used 50 percent of that value, then, as additional labor or/and time

required for checking crops, planting crops, and checking livestock on that northwest quarter of land.

Because they were recurring, Harris capitalized these expenses.

We note as an initial matter that we need not and do not decide whether an income approach would be an appropriate means of determining damages in the instant case; notwithstanding Harris' statement that he used an "income approach," it is clear from the description of what he did that Harris did not attempt to determine the value of the land based on income. Rather, he determined the value of the remainder immediately before the taking by using a comparable sales approach and then considered specific factors which would cause a decrease in the value of that property, including the increased expense in farming the land. It is true that a properly qualified witness may be permitted to use and to testify as to the various factors a well-informed buyer would use in arriving at the price such a buyer would pay for the remaining land. However, as we have seen from the analysis concerning the district court's instructions to the jury, while it is appropriate to consider such items in forming an opinion as to the value of the remaining land, nothing can be allowed for the individual items as individual items. See *Lansman v. State*, 177 Neb. 119, 128 N.W.2d 569 (1964).

Accordingly, it was wrong for Harris to have capitalized the costs of establishing a new water source or the additional costs of hauling grain. The district court therefore properly struck the portion of Harris' testimony in question.

## V. ANALYSIS OF HEYE FARMS' CROSS-APPEAL

### 1. Severance Damages Instruction

That brings us to Heye Farms' cross-appeal and its contention that the district court erred in refusing to give its proposed jury instruction concerning severance damages. Having determined in part IV above that the district court properly instructed in this regard, there can be no merit to Heye Farms' claim.

### 2. Striking of Evidence

Left remaining is Heye Farms' position that the district court erred in refusing to strike Smith's testimony. Heye Farms argues

that because Smith made his appraisal "without knowledge that [Heye Farms] was entitled to a crossing or compensation[,] his testimony is without proper foundation." Brief for appellee on cross-appeal at 22. However, on redirect examination, Smith stated that in making his appraisal, he considered the fact that there was no access between the northwest quarter and the south quarters. Thus, in reaching his conclusion as to Heye Farms' damages, Smith used a comparison of sales of similar property.

Generally, evidence as to the sale of comparable property is admissible as evidence of market value, provided there is adequate foundation to show the evidence is material and relevant. The foundation evidence should show the time of the sale, the similarity or dissimilarity of market conditions, the circumstances surrounding the sale, and other relevant factors affecting the market conditions at the time. *Patterson v. City of Lincoln*, 250 Neb. 382, 550 N.W.2d 650 (1996); *McArthur v. Papio-Missouri River NRD*, 250 Neb. 96, 547 N.W.2d 716 (1996); *Wear v. State of Nebraska*, 215 Neb. 69, 337 N.W.2d 708 (1983). As such was done, the State laid the proper foundation for Smith's evidence. The fact that Smith was not familiar with § 39-1331 goes to the weight, not the admissibility, of his valuation opinion.

## VI. JUDGMENT

For the foregoing reasons, the order of the district court is, as first noted in part I above, reversed and the cause remanded with the direction that the verdict and judgment thereon be reinstated.

REVERSED AND REMANDED WITH DIRECTION.