STATE FARM FIRE AND CASUALTY COMPANY, Appellant,

v.

Robert RODRIGUEZ and Wife, Beth Rodriguez, Appellees.

No. 04-01-00268-CV.

Court of Appeals of Texas, San Antonio.

July 24, 2002.

---

David V. Jones, Noe Reyna, Jones Kurth, Andrews & Ortiz, P.C., San Antonio, Edward J. Batis, Jr., Alamo Heights, Edward F. Kaye, J. Hampton Skelton, Skelton, Woody & Arnold, Austin, for Appellant.

Richard A. Bentley, Law Offices of Richard A. Bentley, San Antonio, for Appellees.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, PAUL W. GREEN, Justice.

Opinion by PHIL HARDBERGER, Chief Justice.

Appellant's motion for rehearing en banc is denied. This court's opinion and judgment dated March 6, 2002 are withdrawn, and this opinion and judgment are substituted. We substitute this opinion to correct a factual misstatement in our original opinion regarding the objection to the testimony of Ramon Carrasquillo and to clarify our opinion in other regards.

This case presents the interesting question of whether a trial court abuses its discretion in granting a motion to strike testimony for discovery abuse when the objection to the testimony is untimely. We hold that the trial court's discretion is not curtailed by the failure of a party to make a timely objection.

In this plumbing leak case, a jury found that the foundation of the involved home sustained damage resulting from a plumbing leak, and that 25% of the damage was attributable to the leak as opposed to other causes. State Farm Fire and Casualty Company ("State Farm") raises four issues on appeal, arguing: (1) the causation testimony of Rodriguezes' expert, Eugene Dabney, should be stricken as unreliable and therefore constitutes no evidence of causation; (2) the evidence offered by the Rodriguezes did not segregate any damages caused solely by the plumbing leak, there-

fore the Rodriguezes did not prove causation under *Wallis v. USAA;* (3) the evidence proved as a matter of law that the damage to the Rodriguezes' house manifested itself prior to the effective dates of the only policy in evidence; and (4) the trial court abused its discretion in striking the testimony of State Farm's expert, Ramon Carrasquillo, which caused the rendition of an erroneous verdict. We affirm the trial court's judgment.

## BACKGROUND

In 1994, the Rodriguezes purchased a home in San Antonio. The house was 35 years old. At the time the Rodriguezes purchased the home, they received a structural evaluation report from a consulting geotechnical engineer, John W. Dougherty ("Dougherty"). In his report, Dougherty noted cracks in the walls in several different areas of the house. Dougherty concluded, however, that the house and its foundation were structurally sound and in good condition. Dougherty said that considering the age of the structure, limited foundation movement, and favorable soil conditions, it would be unlikely that there would be any significant foundation movements in the future.

Both in 1995 and 1996, the Rodriguezes noticed new cracks in the walls of the home. In 1997, Beth Rodriguez noticed a crack in the foundation which was visible through the linoleum on the floor of the dinette. As a result of this foundation crack, the Rodriguezes filed a claim with the insurer of the home, State Farm. The home was insured under a standard Texas Dwelling Policy.

State Farm's adjuster suspected that the home had a plumbing leak underneath the foundation. State Farm hired an independent contractor, Preferred Plumbing,

to determine whether a plumbing leak existed. Preferred Plumbing conducted a static test on the home and confirmed that there was indeed a leak under the home. Next, State Farm hired CH & A Corporation ("CH & A"), an engineering firm, to conduct an investigation of the plumbing leak's role in damaging the foundation. CH & A conducted a structural evaluation of the home which included visual observations and elevation measurements. CH & A concluded that the damage to the Rodriguezes' residence was caused by the settlement of the left side of the house, not the plumbing leak. Citing this report, State Farm denied the Rodriguezes' claim.

The Rodriguezes then filed suit against State Farm alleging causes of action for breach of contract, breach of the duty of good faith and fair dealing, violation of the Deceptive Trade Practices Act, and violation of the Insurance Code. The Rodriguezes also joined CH & A as a defendant in an action for civil conspiracy. The trial court granted summary judgment in favor of the defendants on the Rodriguezes' extra-contractual claims. The breach of contract claim was tried to a jury.

Each side produced one expert witness to support their respective positions. The Rodriguezes' expert was Eugene Dabney ("Dabney"), and State Farm's expert was Ramon Carrasquillo ("Carrasquillo"). State Farm complains about the admission of Dabney's testimony and the striking of Carrasquillo's testimony. Dabney testified that 100% of the damage to the foundation was caused by a plumbing leak. Carrasquillo's position was much to the contrary. He testified that 0% of the damage was caused by a plumbing leak. Although Carrasquillo's testimony was later stricken, the jury's view was more in keeping with Carrasquillo's position. The jury found the plumbing leak caused only 25% of the damage. State Farm alleges that the trial court committed reversible error with its rulings on both experts, so we will examine each expert's testimony separately.

## DISCUSSION

### ADMISSIBILITY OF EUGENE DABNEY'S TESTIMONY

State Farm challenged Dabney's testimony as being unreliable before the trial began. The trial court held a *Daubert/Robinson* hearing but denied State Farm's motion.

Whether the trial court properly admitted expert testimony is subject to an abuse of discretion standard of review. *Helena Chem. Co. v. Wilkins*, 18 S.W.3d 744, 752 (Tex.App.-San Antonio 2000, no pet.). "We examine the entire substance of the expert's testimony 'to determine if the opinion is based on demonstrable fact and does not rely solely on assumptions, possibility, speculation, and surmise.'" *Id.* An abuse of discretion exists when the court fails to analyze or apply the law correctly. *Id.*

In demonstrating that an expert is qualified to testify under Texas Rule of Evidence 702, the proponent of the evidence has the burden to demonstrate that the expert's testimony is both relevant to the issues and based on a reliable foundation. *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995). To be reliable, the scientific evidence must be grounded in scientific method and procedure such that it amounts to more than subjective belief or unsupported speculation. *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 720 (Tex. 1998). "Unreliable evidence is of no assistance to the trier of fact and is therefore inadmissible under Rule 702." *Id.*

In *Robinson*, the Texas Supreme Court enumerated a list of factors to de-

termine the reliability of expert testimony, including: (1) the extent to which the theory has or can be tested; (2) the extent to which the technique relies upon subjective interpretation of the expert; (3) whether the theory has been subjected to peer review and publication; (4) the technique's potential rate of error; (5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and (6) the nonjudicial uses that have been made of the theory or technique. *Robinson,* 923 S.W.2d at 556. However, in *Gammill,* the Court held that the *Robinson* factors do not always apply to expert testimony because they do not always fit. *Gammill,* 972 S.W.2d at 726. Regardless of whether the *Robinson* factors are applied, the proponent of the expert testimony must still prove that the testimony is reliable. *Id.* In such a case, the court must consider whether there is too great of an "analytical gap" between the data and the expert's opinion. *Id.* The trial court's duty is not to determine whether the expert's conclusions are correct, but only whether the analysis used to reach them is reliable. *Id.*

■ State Farm argues that Dabney's testimony is so unreliable that even Dabney himself refers to his opinions as a "wild ass guess." A "wild ass guess" does not sound very reliable. Nevertheless, we must look at the context in which this term was used to make our determination of reliability, as no doubt the trial court did.

Both at the pre-trial *Daubert/Robinson* hearing and during Dabney's testimony at trial, State Farm introduced excerpts from Dabney's deposition testimony taken during discovery. State Farm bases its argument on answers Dabney gave during the deposition. The relevant portions of the testimony are as follows:

Q: Now, Mr. Dabney, as we sit here today, we have identified seven ***potential*** contributing causes to the damage to this house that include, and you affirm or deny these as we go along, number one, plumbing leaks, correct?

A: That's correct.

Q: Number two, climatic conditions, correct?

A: Correct.

Q: Number three, poor drainage, correct?

A: That's correct.

Q: Number four, watering patterns, correct?

A: Correct.

Q: Number five, the railroad or the choo-choo, correct?

A: Correct.

Q: Number six, the bowling ball plant explosion, correct?

A: Correct.

Q: And number seven, the dynamite or other bomb explosion, correct?

A: Correct, ***if they exist,*** yes.

Q: All right. Now, as we sit here today, Mr. Dabney, can you allocate, to a percentage, the cause, the damage to this house and attribute a hundred percent of this house allocated to these seven causes?

A: Absolutely not. That would be a wild-ass guess.

Dabney testified that no credible engineer could allocate 100% of the damage to the seven potential causes in this particular case. State Farm argues that Dabney's inability to allocate 100% of the damage to the various potential contributing causes makes his opinion unreliable. State Farm did not attack Dabney's qualifications, data, or methodology. Because State Farm raises the issue as a "no evidence" point, we must consider all of the

evidence in the record in the light most favorable to the Rodriguezes, indulging every possible inference in their favor. *See Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997).

At the *Daubert/Robinson* hearing, the Rodriguezes presented Dabney's structural evaluation report to the trial court. In preparing his report, Dabney used the same data that CH & A collected with respect to the Rodriguezes' home. After analyzing the data, Dabney said that the *only* possible causes of foundation movement were the influence of a sub-foundation plumbing leak and the influence of climatic conditions. He concluded that the subfoundation plumbing leak was the *only* cause of movement that resulted in damage to the foundation.

Dabney gave the same testimony at trial. He testified that 100% of the damage to the foundation damage was attributable to the plumbing leak. He said there were no other causes of the damage. On cross-examination, State Farm introduced Dabney's deposition testimony to show his inability to segregate 100% of the damage to various *potential* contributing causes. The record also contains an affidavit from Dabney, which the Rodriguezes attached in a response to State Farm's motion for summary judgment. In the affidavit, Dabney reiterates his belief that while there were possible contributing causes to the foundation movement, i.e. plumbing leaks and climatic conditions, the damage to the foundation in this case was caused solely by the leak.

We find Dabney's opinion reliable. There is no dispute that a plumbing leak existed underneath the foundation of the Rodriguezes' home. Dabney's opinions are based on the same data State Farm used: the CH & A report. In his initial report, his affidavit, and his testimony during direct examination at trial, Dabney consistently stated that the plumbing leak caused 100% of the damage to the foundation. The seven contributing causes referenced by State Farm's attorney were merely hypothetical. When asking the question, State Farm's attorney used the phrase "potential contributing causes." Indeed, after acknowledging the seventh and final potential contributing cause, Dabney stated *"if they exist."* Both in his testimony on direct examination and his affidavit, Dabney made it clear that from the data provided to him, the only possible causes of foundation damage were the plumbing leak and climatic conditions.

While Dabney's use of the phrase "wild-ass guess" is not a term of art that can be deemed helpful to the Rodriguezes' case, it does not make the opinion unreliable. He was not required to assign precise percentages to potential contributing causes that he did not believe were even relevant in this case. We look at the substance of the entire testimony, not merely one phrase. Dabney's inability to apportion damage among seven possible contributing causes goes to the weight of his testimony, not its admissibility. The record as a whole shows that Dabney's opinions are grounded in scientific method and procedure and amount to more than subjective belief or unsupported speculation. *See Gammill*, at 720. Examining the entire substance of Dabney's testimony, his opinion "is based on demonstrable fact and does not rely solely on assumptions, possibility, speculation, and surmise." *See Wilkins*, 18 S.W.3d at 752. The trial court did not abuse its discretion in admitting Dabney's expert testimony.

### FAILURE TO PROVE CAUSATION

 Under the doctrine of concurrent causes, when "covered and non-covered perils combine to create a loss, the insured is entitled to recover only that

portion of the damage caused solely by the covered peril(s)." *Wallis v. United Servs. Auto. Ass'n,* 2 S.W.3d 300, 302–03 (Tex. App.-San Antonio 1999, pet. denied). "Because an insured can recover only for covered events, the burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured carries the burden of proof." *Id.* at 303. "To this end, the insured must present some evidence upon which the jury can allocate the damage attributable to the covered peril." *Id.* "Although a plaintiff is not required to establish the amount of his damages with mathematical precision, there must be some reasonable basis upon which the jury's finding rests." *Id.* at 304.

State Farm argues that Dabney failed to allocate 100% of the foundation damage to the various potential contributing causes; therefore, the Rodriguezes did not prove causation under *Wallis.* But, in *Wallis,* "[t]he jury heard *no* testimony regarding how much damage was caused by the plumbing leaks." *See Wallis,* 2 S.W.3d at 304 (emphasis added). Here, Dabney testified that 100% of the damage was caused by the plumbing leaks. Dabney's testimony provided "some reasonable basis upon which the jury's finding [of damage attributable to the plumbing leaks] rests." *See id.*

The next issue is whether the evidence supported the jury's finding that 25% of the damage was attributable to the plumbing leaks. The Rodriguezes' testimony was that 100% of the damage was caused by plumbing leaks. State Farm said that 0% of the damage was caused by plumbing leaks. It is fundamental that a jury may blend the evidence admitted before it and believe all, some or none of a witness's testimony. *See e.g., Aboud v. Schlichtemeier,* 6 S.W.3d 742, 749 (Tex. App.-Corpus Christi 1999, pet. denied);

*E.P. Operating Co. v. Sonora Exploration Corp.,* 862 S.W.2d 149, 154 (Tex.App.-Houston [1st Dist.] 1993, writ denied); *Chrysler-Plymouth City, Inc. v. Guerrero,* 620 S.W.2d 700, 704 (Tex.Civ.App.-San Antonio 1981, no writ). "Juries may disbelieve any witness even though he is neither impeached nor contradicted, they may believe one witness and not others, and they are not required to depend on evidence from a single source." *Mills v. Jackson,* 711 S.W.2d 427, 434 (Tex.App.-Fort Worth 1986, no writ).

In reaching its holding in *Wallis,* this court relied on *Oyster Creek Financial Corp. v. Richwood Investments II, Inc.,* 957 S.W.2d 640 (Tex.App.-Amarillo 1997, pet. denied), to support the assertion that "[A]lthough a plaintiff is not required to establish the amount of his damages with mathematical precision, there must be some reasonable basis upon which the jury's finding rests." *Wallis,* 2 S.W.3d at 304. In *Oyster Creek Financial Corp.,* the court was considering whether the evidence was factually sufficient to support a jury's award of zero dollars for lost profits. 957 S.W.2d at 649. It is well-established that in resolving damage issues, a jury's finding will be upheld if it is within the range of the testimony regarding the amount of damages incurred. *See e.g., Aboud v. Schlichtemeier,* 6 S.W.3d 742 at 748–49; *E.P. Operating Co. v. Sonora Exploration Corp.,* 862 S.W.2d at 154–55; *Chrysler-Plymouth City, Inc. v. Guerrero,* 620 S.W.2d at 704. The same is true regarding the amount of attorneys' fees awarded by a jury. *See Mandell v. Hamman Oil and Refining Co.,* 822 S.W.2d 153, 166 (Tex.App.-Houston [1st Dist.] 1991, writ denied). Accordingly, with regard to the segregation of damages attributable to a covered cause, so long as the jury's finding is within the range of testimony presented, the jury's finding will be

upheld. To hold otherwise would force a jury to accept only the exact percentage proffered by one side or the other. The jury can blend the evidence rather than relying on a single source.

In this case, the testimony regarding the percent of damage attributable to the plumbing leaks ranged from 0% to 100%. The jury's finding of 25% was within this range. The Rodriguezes satisfied the requirements of *Wallis*.

### DAMAGE DURING POLICY PERIOD

 "An insured cannot recover under an insurance policy unless facts are pleaded and proved showing that damages are covered by his policy." *Employers Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex.1988), *overruled on other grounds*, *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696 (Tex.1996). "Texas courts have held that property loss occurs when the injury of damages is manifested." *State Farm Mut. Auto. Ins. Co. v. Kelly*, 945 S.W.2d 905, 910 (Tex.App.-Austin 1997, writ denied). Property damage manifests itself when it becomes "apparent." *Dorchester Dev. Corp. v. Safeco Ins. Co.*, 737 S.W.2d 380, 383 (Tex.App.-Dallas 1987, no writ).

 In considering a legal sufficiency point, we consider only the evidence favorable to the trial court's decision and disregard all evidence and inferences to the contrary. *Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996). If there is any evidence of probative force to support the finding, the issue must be overruled and the finding upheld. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex.1997).

 State Farm argues that the only policy presented into evidence by the Rodriguezes covered a one year period from February 9, 1997 to February 9, 1998.

State Farm contends that the damage to the Rodriguezes' home manifested itself as early as 1995. The Rodriguezes argue that their insurance policy was in existence since 1995, and that State Farm judicially admitted such in a request for admission. In the alternative, they contend that the damage to the home did not manifest itself until 1997.

 The only policy in the record covered the Rodriguezes' home from February 1997 to February 1998. There is, however, evidence in the record indicating that the Rodriguezes were covered by the same policy as early as 1995, renewing the policy annually until 1999. The record contains a check from Beth Rodriguez made out to State Farm in the amount of $263.00. The check has a notation which states "2010 Arroya Vista Ins.–2/9/95–2/9/96." The check also contains an electronic marking at the top "83–BV 4911 9." This is the same policy number of the policy in evidence covering February 1997 to February 1998. The record also contains State Farm's claims file regarding the Rodriguezes' home. Within the file, on a paper entitled "Coverage Information," a notation appears that the policy was first issued in 1995.

State Farm cites an unpublished opinion, *Vanguard Underwriters Ins. Co. v. Forist*, 1999 WL 498200 (Tex.App.-San Antonio 1999, pet. denied) (not designated for publication), for the proposition that an insured must present the actual policy into evidence in order to prove coverage during the policy period. Even if this opinion was citable authority, it is factually distinct from the present case. In *Vanguard*, as in the present case, there was only one actual policy in evidence. *Vanguard*, 1999 WL 498200 at *2. The only other evidence presented by the insured was her oral testimony that she had been covered by an earlier policy. *Id.* There was no other

physical evidence indicating any other policy or its terms. In the present case, there is physical evidence of a policy covering the Rodriguezes' home since 1995.

Both of the Rodriguezes testified that they began noticing cracks in the walls in 1995 and 1996. However, Beth Rodriguez testified that she noticed the foundation crack in 1997. As a result, the damage to the foundation did not become apparent until 1997, when the foundation crack was first noticed. *See Dorchester Dev. Corp.*, 737 S.W.2d at 383. Although cracks in the walls are signs of some foundational problems, such cracks do not indicate foundational damage resulting from a plumbing leak. The record contains probative evidence from which the jury could determine that the foundation damage manifested itself in 1997. *See McLaughlin*, 943 S.W.2d at 430. Even if the damage manifested itself as early as 1995 or 1996, probative evidence exists indicating that the home was covered by a State Farm policy since 1995. *See id.*

### ADMISSIBILITY OF RAMON CARRASQUILLO'S TESTIMONY

State Farm complains that the trial court abused its discretion in striking the testimony of their expert, Carrasquillo. State Farm argues that the Rodriguezes' objection was not timely: therefore, the trial court did not have the discretion to strike the testimony. In addition, State Farm denies any discovery abuse and contends that the punishment was excessive and amounted to a death penalty sanction.

■ Carrasquillo testified in his direct testimony, without objection, that any problems in the foundation were unrelated to a plumbing leak. This testimony was in stark contrast to the testimony of the Rodriguezes' expert, Dabney. Dabney had testified that 100% of the damage to the foundation was caused by a plumbing leak.

In explaining his opinion that 0% of the damages were caused by a plumbing leak, Carrasquillo used a PowerPoint presentation. Cross-examination of Carrasquillo began at 4:20 p.m. Within five minutes, the parties were before the bench arguing about whether there had been discovery abuse concerning the PowerPoint presentation. The Rodriguezes' attorney complained that he never had an opportunity to view the PowerPoint presentation even though it had been requested. State Farm's response was that it was available "before it was presented." State Farm stated that it had letters documenting its offer to make the presentation available. The Rodriguezes' attorney challenged State Farm to show the letters to the trial judge, which the judge then requested. State Farm said they would find the letters, but when State Farm was unable to quickly produce the letters, the trial court ordered the parties to "move on to something else." The parties did so until the court went into recess at 5:00 p.m.

The next morning, before the cross-examination resumed, the Rodriguezes filed a "Plaintiff's Motion to Strike, for Sanctions and for Mistrial." State Farm produced two letters intending to prove to the trial court that the PowerPoint presentation was available to the Rodriguezes. The experienced trial judge read the correspondence and then had a lengthy dialogue with the attorneys, outside the presence of the jury, to determine whether there had been discovery abuse. The trial court focused both on the allegation that the PowerPoint presentation had been withheld by State Farm and on the allegation that new information was contained in the PowerPoint presentation that had not been earlier disclosed in the two depositions that had been taken of Carrasquillo. The Rodriguezes asserted that Carrasquillo had never disclosed that he was going to

rely on prior reductions in the value of the property by the Bexar County Appraisal District. These reductions occurred before the Rodriguezes owned the property and were used by State Farm to imply that preexisting structural problems existed, bolstering Carrasquillo's theory that the plumbing leaks were not the source of the problem. The Rodriguezes complained that they heard about the prior reductions for the first time during Carrasquillo's testimony. Therefore, there was no opportunity to research the appraisals and determine the reason for the reductions. State Farm admitted that there was no mention of the Bexar Appraisal District appraisals in Carrasquillo's depositions, but State Farm pointed out that the appraisals were not a part of the PowerPoint presentation. Instead, the appraisals were mentioned in another portion of Carrasquillo's testimony. In either case, however, Carrasquillo's reliance on the appraisals and the two reductions in value before the Rodriguezes ever purchased the property was a surprise. Given the stage of the trial, it was also impossible for the Rodriguezes to explain the reason the property's value had been reduced before the Rodriguezes even owned the property.

After hearing more complaints about State Farm's failure to disclose Carrasquillo's "analysis process," the trial court questioned the State Farm attorneys as to why they had not produced at least printed pages of the PowerPoint presentation. State Farm raised the issue of compensation and stated that the printout was not complete until trial. Finally, at the end of the lengthy hearing, the following dialogue took place:

> The Court: Tell me again, Mr. Batis, why you didn't just either turn over those copies to him or say, "Come take a look at these and—"

> Mr. Batis: The printout wasn't finished until January 2nd or 3rd when it was finalized, and that's what this is, and that's the day that it was produced at trial.

The trial court pointed out a letter from State Farm dated December 12, 2000, stating, "We do not agree to provide you a copy of it, nor will any explanation, questioning, or examination be done during the review." State Farm explained that was "during the deposition." The trial court then noted that the Rodriguezes' attorney had made one last attempt as late as December 18, 2000, to see a copy of the presentation, stating in a letter: "Accordingly, I request again a copy thereof be tendered to this office as soon as possible." For whatever reason, this never happened. The Rodriguezes first saw the PowerPoint presentation when it was shown to the jury. After hearing arguments from both sides about whether there had been discovery abuse and, if so, the extent of the abuse, the trial court struck Carrasquillo's testimony.

■ State Farm takes the position that the trial court could not strike the testimony because the objection was made too late. We do not believe the trial court is so restricted. Trial judges have wide discretion in making whatever decisions are necessary to insure a fair trial to both parties. Their decisions fall within an abuse of discretion standard of review.

State Farm cites several cases in which a trial court has been affirmed in refusing to strike testimony absent a timely objection. *See, e.g., Clark v. Trailways, Inc.,* 774 S.W.2d 644, 647–48 (Tex.1989); *Aluminum Chemicals (Bolivia) v. Bechtel Corp.,* 28 S.W.3d 64, 69 (Tex.App.-Texarkana 2000, no pet.); *Lubbock County v. Strube,* 953 S.W.2d 847, 855 (Tex.App.-Austin 1997, pet. denied); *Miles v. Ford Motor Co.,* 922 S.W.2d 572, 591 (Tex.App.-

Texarkana 1996), *rev'd on other grounds*, 967 S.W.2d 377 (Tex.1998); *Gifford Hill American, Inc. v. Whittington*, 899 S.W.2d 760, 765 (Tex.App.-Amarillo 1995, no writ); *Roling v. Alamo Group (USA), Inc.*, 840 S.W.2d 107, 111 (Tex.App.-Eastland 1992, writ denied); *Wenco of El Paso/Las Cruces, Inc. v. Nazario*, 783 S.W.2d 663, 665 (Tex.App.-El Paso 1989, no writ); *Hix v. Wirt*, 220 S.W.2d 530, 532 (Tex.Civ.App.-Waco 1949, writ ref'd n.r.e.). There is no question that a party who does not make a timely objection may well find that the trial court will not grant relief because the objection comes too late, and appellate courts routinely affirm the trial court's denial of relief in the absence of a timely objection. This is not the situation presented in this case. The trial court granted the relief. No doubt, had the trial court chosen to, it could have denied relief without fear of reversal, but the fact that the trial court had the option to deny relief does not mean that the trial court erred in granting relief. It means the trial court had the discretion to rule either way.

Among other things, the trial court learned that Carrasquillo was relying on appraisals to bolster his opinion when he had never indicated that he intended to rely on the appraisals. These appraisals implied, by showing that there had been two devaluations of the property before the Rodriguezes ever owned the property, that something was already amiss with the property that had nothing to do with the Rodriguezes' claim of a plumbing leak. The Rodriguezes had no meaningful way to reply to the appraisals as they were already in the last day of testimony in the trial. The trial court also learned that the PowerPoint presentation was never shown to the Rodriguezes despite repeated requests for it. The Rodriguezes saw the presentation at the same time the jury did. While there were various reasons given as to how this came to be, the trial court had

the ability to make its own determination as to whether there had been discovery abuse. We will not disturb these findings in view of the record that is before this court.

■ State Farm's position is that the trial court does not have the authority to strike Carrasquillo's testimony because the Rodriguezes' objection to the testimony was too late. We agree that the initiative in excluding improper evidence rests with the opposing party that wishes to keep the testimony from the jury, and by not making a timely objection, the opposing party may lose the right to complain. But that does not mean that the trial court has lost discretion to take proper action to insure a fair trial. Trial courts possess inherent powers to discipline attorney behavior through the imposition of sanctions sua sponte in appropriate cases. *Roberts v. Rose*, 37 S.W.3d 31, 33 (Tex.App.-San Antonio 2000, no pet. h.). A trial judge on his own motion may exclude improper testimony. *Schafer v. Stevens*, 352 S.W.2d 471, 482 (Tex.Civ.App.-Dallas 1961, no writ). A trial judge's power cannot be fatally debilitated simply by a lawyer's tardy objection.

A similar situation was discussed in *Heye Farms v. Nebraska*, 251 Neb. 639, 558 N.W.2d 306 (1997). In that case, there was a belated motion to strike testimony, and no objection was previously made. *Heye Farms*, 558 N.W.2d at 312. The issue raised on appeal was the same as in the instant case, i.e., whether evidence was improperly stricken because a party's objection was untimely. *Id.* The Supreme Court of Nebraska held:

> [W]e think the proper rule is: The entertainment of a belated motion to strike testimony, no objection having been previously made thereto, is discretionary with the trial court.

*Id.* The Nebraska court held that the trial court did not abuse its discretion. *Id.* We agree that in the instant case the trial court had the discretion to grant the motion to strike.

### EXCESSIVENESS OF THE SANCTIONS

■ We now turn to State Farm's point of error alleging that the striking of Carrasquillo's testimony in its entirety as a discovery sanction was excessive as a matter of law.

■ Sanctions for discovery abuse must be "just." *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex.1991). Whether sanctions are just must meet a two-part test: (1) there must be a direct relationship between the offensive conduct and the sanction imposed, and (2) the sanction must not be excessive. *Id.* In other words, the "punishment should fit the crime." *Id.*

■ "A trial court has broad discretion in entering sanctions." *Hawkins v. Estate of Volkmann*, 898 S.W.2d 334, 346 (Tex. App.-San Antonio 1994, writ denied). "The standard of review on appeal is whether the trial court abused its discretion." *Id.*

State Farm contends that striking Carrasquillo's testimony amounted "to imposing a death penalty sanction" and violates the rules set forth in *TransAmerican.* State Farm argues that the trial court prevented State Farm from rebutting Dabney's testimony and presenting the merits of its own defense.

■ Whether the exclusion of evidence constitutes a death penalty sanction must be determined on a case-by-case basis. *See Revco, D.S., Inc. v. Cooper*, 873 S.W.2d 391, 396 (Tex.App.-El Paso 1994, no writ). Where the exclusion of expert testimony is only an inconvenience that impairs the presentation of a party's case

but does preclude a trial on the merits, the exclusion of evidence is not a death penalty sanction. *See id.; see also Estate of Riggins*, 937 S.W.2d 11, 20 (Tex.App.-Amarillo 1996, writ denied) (noting exclusion of evidence not a death penalty sanction if it "inhibits" rather than "terminates" the presentation of the case); *Soeffe v. Stewart*, 847 S.W.2d 311, 314, 315 (Tex.App.-San Antonio 1992, writ denied) (questioning whether exclusion of evidence is a death penalty sanction), *abrogated on other grounds, State Farm Fire & Cas. Co. v. Morua*, 979 S.W.2d 616 (Tex.1998).

While State Farm's case would have undoubtedly been stronger with Carrasquillo's testimony, we cannot agree that the striking of his testimony was a death penalty sanction. The jury agreed more with State Farm's position than with the Rodriguezes' claim. State Farm contended that 0% of the damages were caused by the covered plumbing leaks, while the Rodriguezes claimed 100% of the damages were caused by the plumbing leaks. The jury found only 25% of the damages were caused by plumbing leaks. A true death penalty sanction would have insured that the Rodriguez's received a 100% finding, not a 25% finding. Therefore, State Farm's contention that the striking of Carrasquillo's testimony amounted to a death penalty sanction is not accurate. State Farm did not have the burden of proof. Striking Carrasquillo's testimony did not prevent State Farm from presenting the merits of its defense, and it, in fact, did so with some success. The case was not tried on sanctions but on its merits. The striking of Carrasquillo's testimony was not a death penalty sanction, and the trial court did not abuse its discretion in granting the motion to strike based on State Farm's discovery abuse.

■ Even if we were to assume that State Farm is correct that striking Carras-

quillo's testimony is a death penalty sanction, we would not find that the trial court abused its discretion in striking the testimony. A death penalty sanction is justified when counsel callously disregards the responsibilities of discovery under the rules. *TransAmerican,* 811 S.W.2d at 918. The trial court determined that State Farm had engaged in abusive practices by withholding the PowerPoint presentation. The trial court noted that State Farm ignored repeated requests for the presentation, and State Farm's only response was that the presentation was not finished until trial. It was within the trial court's discretion to disbelieve this excuse and to find that State Farm's counsel had deliberately decided not to disclose the PowerPoint presentation or Carrasquillo's intent to rely on the Bexar County Appraisal District's appraisals. It was within the trial court's discretion to determine that State Farm callously disregarded the responsibilities of discovery under the rules in order to engage in trial by ambush, which the discovery rules were designed to prevent. *See Smith v. Southwest Feed Yards,* 835 S.W.2d 89, 91 (Tex.1992).

### Conclusion

The judgment of the trial court is affirmed.