

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 2-09-265-CV

DON NORRIS AND AVERY                                                     APPELLANTS
AIR CONDITIONING/HEATING
AND A-ABAC SERVICES, INC.

V.

SHELBY JACKSON                                                              APPELLEE

------------

FROM COUNTY COURT AT LAW NO. 2 OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

Following a bench trial, the trial court entered judgment against Appellants Don Norris and Avery Air Conditioning/Heating and A-ABAC Services, Inc. (Avery) and in favor of Appellee Shelby Jackson. In six issues, Norris and Avery

---

[1]*See* Tex. R. App. P. 47.4.

(collectively, Appellants) contend that the evidence is legally and factually insufficient to establish that Avery violated the Texas Deceptive Trade Practices Act (DTPA),[2] that Jackson suffered $500 in economic damages, that Norris committed an unconscionable act, that Jackson suffered $2,500 in mental anguish damages, that Jackson is entitled to treble damages or attorney's fees, and that Jackson's attorney's fees are reasonable. We affirm.

## II. Background

In response to Avery's television, radio, and printed advertisements, Jackson contacted Avery to purchase a new air conditioner and furnace. Avery employee Wayne Settles met with Jackson at her home on March 13, 2007. Among other things, Settles told Jackson that she would receive a $500 tax certificate from Avery within two weeks,[3] a ten-year warranty on parts and labor, a lifetime warranty on the compressor and heat exchange, and utility bill savings over three to four years that would equal the purchase price of the air conditioner and furnace. On March 29, 2007, Jackson signed a Proposal and Agreement (the Agreement) to pay $8,500 for the replacement and installation of a new heating and air conditioning unit, which would include insulation, wind turbines,

---

[2]See Tex. Bus. & Com. Code Ann. §§ 17.41 et seq. (Vernon 2002 & Supp. 2010).

[3]One of Avery's print advertisements states, in part, "THE GOV'T WILL GIVE YOU $500 TO HELP!"

2

new duct work, and a thermostat.[4] Jackson testified that she relied on Settles's representations concerning the $500 tax certificate, the warranties, and cost recoupment within three to four years when deciding to enter into the Agreement.

Avery employees began installation of the air conditioning and heating unit on March 30, 2007. Jackson had the installation stopped, though, because the workers did not bring new ductwork to install; the workers also damaged a door frame and an antique grandfather clock in Jackson's home. Jackson then spoke with Norris, another Avery employee. Norris attempted to have Jackson abandon the ductwork replacement because he did not believe it was necessary, but he eventually told Jackson that the ductwork would be installed the next day. Jackson also spoke with Avery employee Chris Busby, who represented in writing that Avery would complete an airflow test and install the ductwork and wind turbines the next day. Jackson testified that she would have canceled the Agreement on March 30, 2007, but for Norris's and Busby's representations.

Avery employees, including Busby, returned to complete the installation on March 31, 2007, but they did not perform the airflow test, install the ductwork, or place the wind turbines where Jackson had instructed they be installed (even though it was possible to do so). As a result, Jackson initially refused to sign the completion certificate, and Avery employee Larry Clark called Norris. Jackson testified that while Clark was speaking with Norris by telephone, Clark told her

---

[4]This was actually the second contract between the parties; the first contract was for $8,200 and did not provide for new duct work.

3

that Norris had authorized a reduction in the contract price from $8,500 to $7,500 to cover the uninstalled ductwork and the damage to the door frame and grandfather clock. According to Jackson, Clark told her that if she signed the completion certificate and a new charge slip for $7,500, doing so would modify the Agreement; he also said that Avery would accept the modification.[5] Jackson testified that Clark also told her that she would continue to have all benefits of the Agreement, other than the three items included in the price reduction. Jackson testified that she relied on Clark's representations in deciding to sign the completion certificate and the $7,500 charge slip. That same day, Jackson paid $7,500 to Avery. Contrary to Jackson's testimony, Clark testified that the charge slip was not a modification of the contract but was instead an agreement by Avery to allow Jackson to hold the $1,000 until Avery could repair the damage to the door frame and grandfather clock.

Jackson did not receive the $500 tax certificate from Avery, despite her repeated calls to Avery requesting the certificate. On June 22, 2007, responding to Jackson's inquiries concerning the tax certificate, Norris called Jackson and told her that she still owed Avery $1,000. During the call, Norris called Jackson a crook and a thief, and he told her that she would not get away with taking $1,000 from Avery, that he would put a lien on her house, and that he would take away

_____

[5]Clark repeated his statements about the price reduction to William Jackson, Jackson's ex-husband (William). William testified that he had no doubt after speaking with Clark that the contract price had been permanently reduced by $1,000.

4

her warranty. Norris admitted to Jackson that he knew on June 22 about Jackson's conversation with Clark on March 31 and that he had told Clark to take off the $1,000 from the contract price, but he told her that he intended to collect it later. Norris confirmed the substance of his June 22 conversation with Jackson to Jackson's ex-husband; he told William that Jackson was a thief and had committed extortion, that "this has happened before with many customers," that he would take Jackson to court, and that he had never lost a case. Contrary to the testimony by Jackson and William, Norris testified that he did not call Jackson a crook or a thief and that he did not threaten to put a lien on her house.[6]

Jackson offered evidence of her economic damages relating to the system's airflow, problems with the wind turbines that were not resolved by Avery, the system not paying for itself in three to four years, and Avery's failure to provide the $500 tax certificate. Jackson also presented evidence of her mental anguish. She testified, among other things, that during and after the June 22 call from Norris, her blood pressure went up to 180 from her normal range in the 120s, that her blood pressure remained between 140 and 160 after the call, and that she confirmed her blood pressure readings with her blood pressure monitor. She testified that she believed Norris's threats, that she was "scared to death," that his "bully talking" made her feel very intimidated and nervous, and that she

---

[6]On cross-examination, Norris admitted that he pleaded guilty in 2007 to theft in the amount of $77,500 and in 2006 to theft of a check for more than twenty but less than $500.

could not sleep because of her fear and anxiety that Norris would put a lien on her house.

In its findings of fact and conclusions of law, the trial court found that Jackson and Avery had modified the Agreement to reduce the purchase price of the air conditioner and furnace by $1,000; that Avery violated the DTPA by representing that the Agreement conferred or involved rights, remedies, or obligations it did not have or involve and by failing to disclose information with the intent to induce Jackson into the transaction; that Avery's DTPA violations caused Jackson to suffer $500 in economic damages; that Avery's DTPA violations were committed knowingly; that Jackson's $500 in economic damages should be trebled; and that Jackson should recover $4,000 in attorney's fees from Avery. The trial court also found that Norris violated the DTPA by engaging in an unconscionable action or course of conduct; that Norris's DTPA violation caused Jackson to suffer $2,500 in mental anguish damages; that Norris's DTPA violation was committed intentionally; that Jackson's $2,500 mental anguish damages should be trebled; and that Jackson should recover $16,000 in attorney's fees from Norris. On July 8, 2009, the trial court signed an amended final judgment in accordance with its findings of fact and conclusions of law.[7]

---

[7]In the amended final judgment, the trial court also awarded Jackson $7,500 in conditional attorney's fees for an appeal to the court of appeals.

6

### III. Standards of Review

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). Conclusions of law may not be challenged for factual sufficiency, but they may be reviewed to determine their correctness based upon the facts. *AMX Enters., L.L.P. v. Master Realty Corp.*, 283 S.W.3d 506, 519 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g); *Dominey v. Unknown Heirs & Legal Representatives of Lokomski*, 172 S.W.3d 67, 71 (Tex. App.—Fort Worth 2005, no pet.).

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding

under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

## IV. DTPA Violations vs. Breach of Contract

In their first issue, Appellants contend there is legally and factually insufficient evidence to establish that Avery violated the DTPA because the representations Avery made to Jackson became part of the contract between the parties and because any failure to satisfy those representations is a breach of contract, not a violation of the DTPA.

Under the DTPA, a consumer may recover damages incurred as a result of another's false, misleading, or deceptive acts or practices. *See* Tex. Bus. & Com. Code Ann. § 17.50(a)(1). However, mere breach of contract, without more,

8

does not violate the DTPA. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998). But when representations are made outside the contract, a violation of the DTPA may occur. *Cont'l Dredging, Inc. v. De-Kaizered, Inc.*, 120 S.W.3d 380, 390 (Tex. App.—Texarkana 2003, pet. denied). Whether a breach of contract rises to the level of a misrepresentation sufficient to trigger the DTPA is a fact driven inquiry that, once the facts are ascertained, is a question of law. *Id.* at 389. When a representation by a defendant causes no harm itself, but instead the injury or damage was caused by the breach of contract, that injury is governed by contract law, not the DTPA. *See Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14–15 (Tex. 1996).

In *Tony Gullo Motors I, L.P. v. Chapa*, the plaintiff alleged that the defendant promised her one vehicle model, delivered another, and had no intention of delivering the model it initially promised. 212 S.W.3d 299, 304–05 (Tex. 2006). The supreme court stated, "[W]hile the failure to deliver a Highlander Limited would not alone violate the DTPA, Chapa's claim was that Gullo Motors represented she would get one model when in fact she was going to get another." *Id.* The court held, "While failure to comply would violate only the contract, the initial misrepresentation violates the DTPA." *Id.* (citing Tex. Bus. & Com. Code Ann. § 17.46(b)(7), (24)).

Avery's actions in this case were more than mere breaches of the parties' contract. The trial court found that Avery violated the DTPA by representing that the Agreement conferred or involved rights, remedies, or obligations it did not

9

have or involve and by failing to disclose information with the intent to induce Jackson into the transaction. In that regard, Jackson presented evidence that Avery represented, through Sellers, that Avery would provide Jackson with a $500 tax certificate, that the representation concerning the $500 tax certificate is not a stated term of the Agreement, that Jackson relied on the representation when deciding to enter into the Agreement with Avery, that Avery did not provide Jackson with a $500 tax certificate, and that Avery does not provide tax certificates to any of its customers. This evidence was sufficient for the trial court to find that Avery represented that it would deliver a $500 tax certificate but had no intention of doing so. In addition, Jackson presented evidence that Avery agreed to permanently reduce the contract price by $1,000 but later threatened legal action and counterclaimed against Jackson for the $1,000. Thus, the trial court had before it additional evidence sufficient to find that Avery failed to disclose its intent to later collect the $1,000 to induce Jackson into continuing the transaction. The evidence supports the trial court's findings that Avery represented that the Agreement conferred or involved rights, remedies, or obligations it did not have or involve and failed to disclose information with the intent to induce Jackson into the transaction.

Relying on *Crawford*, 917 S.W.2d at 14, *Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied), and *Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 743 (Tex. App.—Fort Worth 2005, no pet.), Appellants argue that Jackson's damages were caused by Avery's failure to

10

perform the parties' contract and not by any representations in violation of the DTPA. But each of the cited cases is distinguishable. In *Crawford*, the defendants represented that the plaintiff's business would grow at least seventy to eighty percent in one year by placement of a yellow pages ad, the parties contracted for the placement of an ad in the yellow pages, but the ad did not appear in the yellow pages as promised. *See* 917 S.W.2d at 12–13. The supreme court held that the defendants' statements "were nothing more than representations that the defendants would fulfill their contractual duty to publish." *Id.* at 14. There was no allegation in *Crawford* that the defendants never intended to perform their contractual obligations. *See id.* at 12–15. In *Mays*, the alleged misrepresentations were terms of the parties' contract and the defendant's bids after the parties entered into the contract. *See* 203 S.W.3d at 575. The *Mays* court held that because there was legally insufficient evidence that the defendant never intended to perform its contract, the plaintiff's allegations did not rise above a breach of contract claim. *Id.* And in *Head*, the plaintiff's complaint related to an explicit term of the parties' agreement—that a licensed real estate inspector would perform the inspection. *See* 159 S.W.3d at 742–43. Here, Jackson presented evidence of representations that Avery never intended to satisfy and that were outside the terms of the Agreement: that Avery would provide Jackson with a $500 tax certificate and that Avery would reduce the contract price by $1,000.

11

Appellants also argue that the trial court found that all of Avery's representations became part of the Agreement and that, therefore, any failure to satisfy those representations was a breach of contract. But Appellants ignore the evidence that Avery never intended to comply with its representations. Thus, even if Avery's representations about the $500 tax certificate and $1,000 reduction in price became part of the Agreement,[8] the trial court heard evidence that Avery never intended to provide a $500 tax certificate or reduce the contract price by $1,000. The initial representations without the intent to perform violate the DTPA. *See Tony Gullo Motors*, 212 S.W.3d at 305.

After reviewing all of the evidence in the light favorable to the trial court's finding, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not, we hold that there is legally sufficient evidence to support the trial court's finding that Avery's conduct was actionable under the DTPA. Likewise, after considering and weighing all of the evidence pertinent to the trial court's finding, we cannot say that the evidence supporting the trial court's finding is so weak or contrary to the overwhelming weight of all the evidence that it should be set aside and a new trial ordered. We overrule Appellants' first issue.

---

[8]It is unclear from the record whether the trial court found that all of Avery's representations to Jackson became part of the Agreement or whether the trial court found only that Avery's representations about the warranties Jackson would receive became part of the Agreement.

12

## V. Economic Damages

Appellants contend in their second issue that the evidence is legally and factually insufficient to support the trial court's finding that Jackson suffered $500 in economic damages as a result of Avery's DTPA violation. Specifically, Appellants argue that Jackson presented no evidence of damages that were not subsumed within the $1,000 reduction in the Agreement price.

As the trier of fact, the trial court determines the credibility of the witnesses and the weight to be given their testimony, and we may not substitute our judgment for that of the fact finder simply because we may disagree with the fact finder's conclusions. *Pool*, 715 S.W.2d at 635. Because they can observe a witness's demeanor, trial courts are given great latitude as fact finders to believe or disbelieve a witness's testimony, particularly when the witness is interested in the outcome. *In re Doe 4*, 19 S.W.3d 322, 325 (Tex. 2000). Moreover, the trial court can reject the uncontroverted testimony of an interested witness unless the testimony is readily controvertible, clear, positive, and direct and there are no circumstances that tend to discredit or impeach the testimony. *Id.*; *Lofton v. Texas Brine Corp.*, 777 S.W.2d 384, 386 (Tex. 1989).

Jackson presented evidence that Avery did not provide the $500 tax certificate, that she would not recoup the cost of the new air conditioner and furnace in three to four years through reduced utility bills, and that the $1000 contract price reduction related only to the damage to the door frame and grandfather clock and failure to install new ductwork. She also presented

13

evidence that she spent approximately $300 repairing the air flow and $600 having the wind turbines moved to different locations. Thus, the trial court's finding of $500 in economic damages is within the range of evidence Jackson presented at trial. *See Gulf States Util. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002) (stating that the fact finder "has discretion to award damages within the range of evidence presented at trial").

Appellants contend that the trial court could not have based the economic damage award on the failure to deliver the tax certificate because Jackson did not rebut Norris's testimony that a tax certificate is not required to claim a tax credit and that Jackson only needed her contract to claim the tax credit. But the trial court alone determines the weight and credibility of the testimony and could have validly disregarded Norris's testimony.[9] *See In re Doe 4*, 19 S.W.3d at 325; *Lofton*, 777 S.W.2d at 386. Furthermore, without considering the $500 tax certificate, the trial court could have found $500 in economic damages by accepting some, but not all, of the evidence that Jackson spent $900 repairing the air flow and moving the wind turbines and that the new air conditioner and

---

[9]To the extent Appellants contend Jackson was required to present expert testimony that a tax certificate is required to claim the tax credit, Appellants waived this contention by raising it for the first time in their reply brief. *See Priddy v. Rawson*, 282 S.W.3d 588, 597 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). Moreover, expert testimony is not always required to establish economic damages under the DTPA. *See Froemming v. Perez*, No. 04-05-00514-CV, 2006 WL 704479, at *3 (Tex. App.—San Antonio Mar. 22, 2006, no pet.) (mem. op.) (finding sufficient evidence of $7,000 in economic damages based on consumer's lay testimony of $3,500 paid to defendant orthodontist and estimated $3,500 to remedy defendant's DTPA violations).

furnace did not sufficiently lower Jackson's utility bills for her to recoup the cost of the system in three to four years. *See State Farm Fire & Cas. Co. v. Rodriguez*, 88 S.W.3d 313, 321 (Tex. App.—San Antonio 2002, pet. denied) ("It is fundamental that a jury may blend the evidence admitted before it and believe all, some or none of a witness's testimony."), *abrogated on other grounds by Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 27 (Tex. 2008).

After reviewing all of the evidence in the light favorable to the trial court's finding, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not, we hold that there is legally sufficient evidence to support the trial court's finding that Jackson suffered $500 in economic damages as a result of Avery's DTPA violation. Likewise, after considering and weighing all of the evidence pertinent to the trial court's finding, we cannot say that the evidence supporting the trial court's finding is so weak or contrary to the overwhelming weight of all the evidence that it should be set aside and a new trial ordered. We overrule Appellants' second issue.

## VI. Norris's Unconscionable Act

Appellants argue in their third issue that the evidence is legally and factually insufficient to support the trial court's finding that Norris committed an unconscionable act.

The DTPA defines an unconscionable action or course of action as "an act or practice which, to a consumer's detriment, takes advantage of the lack of

15

knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code Ann. § 17.45(5). To prove an unconscionable action or course of action, Jackson was required to show that Norris took advantage of her lack of knowledge and that the resulting unfairness was glaringly noticeable, flagrant, complete, and unmitigated. *See Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001); *Bennett v. Bank United*, 114 S.W.3d 75, 82 (Tex. App.—Austin 2003, no pet.). The relevant inquiry examines the entire transaction, not Norris's intent. *Chastain v. Koonce*, 700 S.W.2d 579, 583 (Tex.1985); *Cooper v. Lyon Fin. Servs., Inc.*, 65 S.W.3d 197, 207 (Tex. App.—Houston [14th Dist.] 2001, no pet.). "Section 17.45(5) is intended to be an objective standard." *Chastain*, 700 S.W.2d at 583.

Jackson presented evidence that Norris (1) insulted and falsely accused Jackson of criminal and fraudulent conduct; (2) repeated his accusations to William; (3) told Jackson that he would cancel her lifetime warranty under the Agreement; (4) told Jackson that he would place a lien on her residence; (5) told Jackson that he would "take her to court" and that "Avery has never lost a case"; (6) told William that he would charge Jackson's credit card for the additional $1,000 under the Agreement; and (7) admitted to William that he and Avery never intended to honor the $1,000 modification of the Agreement. Norris is Avery's general manager, and Jackson is a retired, single, elderly woman with no college degree. Jackson testified that she believed Norris's threats and suffered physical manifestations of mental anguish; she also relied on Norris's agreement

16

to reduce the Agreement price by $1,000.  This evidence is sufficient to prove that Norris took advantage of Jackson's lack of knowledge and that the resulting unfairness was glaringly noticeable, flagrant, complete, and unmitigated.  *See Bradford*, 48 S.W.3d at 760; *Bennett*, 114 S.W.3d at 82.

The evidence is also sufficient to prove that Norris acted intentionally.  "Intentionally" is defined by the DTPA to mean "actual awareness of the falsity, deception, or unfairness of the act or practice" together "with the specific intent that the consumer act in detrimental reliance on the falsity or deception."  *See* Tex. Bus. & Com. Code Ann. § 17.45(13).  Section 17.45(13) further provides that intent "may be inferred from objective manifestations that indicate that the person acted intentionally."  *Id.*  Norris, through Clark, told Jackson that the Agreement price would be reduced by $1,000 if she signed the completion certificate and the charge slip.  But Norris told William that he never intended to honor the $1,000 modification, and in the June 22 telephone call, Norris threatened Jackson and accused her of criminal conduct while trying to collect the additional $1,000.

Relying on *Chastain*, Appellants argue that Norris's conduct during the June 22 telephone call with Jackson cannot support the trial court's finding because the conduct occurred several months after the original transaction.  *See* 700 S.W.2d at 584.  In *Chastain*, the purchasers of five rural homesteads sued vendors for threats made over the telephone and alleged unconscionable action in violation of the DTPA.  *Id.* at 580.  But the court held that "[t]he phone

17

conversation occurred approximately one year after the alleged misrepresentations occurred and [did] not reflect on the unfairness of the original transaction." *Id.* Here, Norris spoke with Jackson on June 22 because Jackson had called to inquire about the $500 tax certificate she had not yet received. Thus, Norris's unconscionable conduct occurred during the course of the transaction between Jackson and Avery. *See Houston Livestock Show & Rodeo, Inc. v. Hamrick*, 125 S.W.3d 555, 575–76 (Tex. App.—Austin 2003, no pet.) (distinguishing *Chastain* and holding that the unconscionable actions occurred during the course of the transaction because they occurred before the defendant had made payment to the consumers).

After reviewing all of the evidence in the light favorable to the trial court's findings, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not, we hold that there is legally sufficient evidence to support the trial court's findings that Norris committed an unconscionable act and acted intentionally. Likewise, after considering and weighing all of the evidence pertinent to the trial court's findings, we cannot say that the evidence supporting the trial court's findings is so weak or contrary to the overwhelming weight of all the evidence that they should be set aside and a new trial ordered. We overrule Appellants' third issue.

## VII. Mental Anguish Damages

Appellants contend in their fourth issue that the evidence is legally and factually insufficient to support the trial court's finding that Jackson is entitled to

18

mental anguish damages. They argue that the evidence does not reveal mental anguish severe enough to warrant monetary recovery or a basis for $2,500 in mental anguish damages.

Section 17.50(b)(1) of the Texas Business and Commerce Code allows the award of mental anguish damages on a DTPA claim if the trier of fact finds that the conduct of the defendant was committed "intentionally." Tex. Bus. & Com. Code Ann. § 17.50(b)(1). To recover mental anguish damages under the DTPA, the plaintiff must present "direct evidence of the nature, duration, and severity of [the] mental anguish, thus establishing a substantial disruption in the [plaintiff's] daily routine." *Latham v. Castillo*, 972 S.W.2d 66, 69–70 (Tex. 1998); *see Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995); *Anderson v. Long*, 118 S.W.3d 806, 811 (Tex. App.—Fort Worth 2003, no pet.). Proof of a physical manifestation of mental anguish is not required. *City of Tyler v. Likes*, 962 S.W.2d 489, 495 (Tex. 1997); *Parkway*, 901 S.W.2d at 443. But a plaintiff's own testimony of extreme fright, constant worry, extreme apprehension, extreme embarrassment, nervousness on a daily basis, and loss of sleep does not, without more, present more than a scintilla of evidence to support an award of mental anguish damages. *Anderson*, 118 S.W.3d at 811 (citing *Latham*, 972 S.W.2d at 69–70).

Jackson testified that she is seventy years old and receives no financial support from her children, former husband, or anyone else; that she has a limited income, lives on a budget, and has to be frugal; that her blood pressure had

19

stayed in the 120s before the June 22 telephone call with Norris; that her blood pressure went up to 180 during and immediately after the telephone call with Norris and was staying "way over 140, 160 usually" since the call; that there were no factors other than Appellants' actions that caused her high blood pressure; that she believed Norris's threats; that she previously had no trouble sleeping but could not sleep after the telephone call because of her fear that a lien would be placed on her house; that Norris's "bully talking" made her feel very intimidated, nervous, and "very scared"; that she is no longer the content and happy person she was before the telephone call; and that she is tired from the stress, is worried, is not as energetic, and is irritable with her grandchildren. William testified that Jackson was very upset and frightened immediately after the telephone call with Norris; that he personally observed how Norris's conduct affected Jackson; that Jackson constantly worried about the situation and was "really, really upset"; that she is now irritable with her grandchildren to the point where he thought other arrangements for their care should be made for Jackson's sake; that Jackson called him late at night, when she was normally asleep, to talk about what happened; that Jackson's health had gone downhill a lot since the telephone call; and that Jackson was normally a very organized person but had lost control since the telephone call. This evidence constitutes "'direct evidence of the nature, duration, and severity of [Jackson's] mental anguish,' and established 'a substantial disruption in [Jackson's] daily routine.'" *CA Partners v. Spears*, 274 S.W.3d 51, 78 (Tex. App.—Houston [14th Dist.]

20

2008, pet. denied) (quoting *Parkway*, 901 S.W.2d at 444, and holding that the plaintiff presented legally and factually sufficient evidence of mental anguish damages).

Citing *Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W.2d 854, 861 (Tex. 1999), Appellants contend that Jackson was required to prove that "Norris's DTPA violation was the sole proximate cause of her mental anguish, not Avery or some other cause." First, the causation standard in DTPA cases is producing cause, not proximate cause. *See Prudential Ins. Co. of Am. v. Jefferson Assoc., Ltd.*, 896 S.W.2d 156, 160–61 (Tex. 1995). Second, Jackson's evidence relates to her mental anguish following the June 22 telephone call with Norris, not the issues she had with Avery concerning the actual installation of the air conditioner and furnace. Thus, Jackson presented sufficient evidence that Norris's conduct during the June 22 telephone call was the producing cause of her mental anguish damages. *See Doe v. Boys Club, Inc.*, 907 S.W.2d 472, 481 (Tex. 1995) (defining producing cause in context of a DTPA misrepresentation claim to be "a substantial factor which brings about the injury and without which the injury would not have occurred."); *see also Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 (Tex. 2007) (defining producing cause in product liability case to be "a substantial factor in bringing about an injury, and without which the injury would not have occurred").

Appellants also argue that Jackson offered insufficient evidence to support the $2,500 in mental anguish damages found by the trial court. They argue that

21

"the trial court just picked the number $2,500 out of the blue" and "did not incorporate a finding that the $2,500 would fairly and reasonably compensate Jackson for her mental anguish." In *Saenz v. Fidelity & Guaranty Insurance Underwriters*, our supreme court held that there must be evidence that the amount of damages awarded by the jury for mental anguish was fair and reasonable. *See* 925 S.W.2d 607, 614 (Tex. 1996). But the court acknowledged that such determination is often difficult:

> There must be evidence that the amount found is fair and reasonable compensation, just as there must be evidence to support any other jury finding. Reasonable compensation is no easier to determine than reasonable behavior—often it may be harder—but the law requires factfinders to determine both. And the law requires appellate courts to conduct a meaningful evidentiary review of those determinations.

*Id.*

In this case, the trial court was in the best position to determine the weight and credibility of the testimony from Jackson and William concerning the physical manifestations of Jackson's mental anguish and the disruption in her life. In addition, we note that although the trial court awarded all of the $2,500 in mental anguish damages that Jackson requested, the trial court did not award a majority of the other damages that Jackson sought. *See Schindler Elevator Corp. v. Anderson*, 78 S.W.3d 392, 415 (Tex. App.—Houston [14th Dist.] 2001, pet. granted, judgm't vacated w.r.m.) (reasoning that an award of some damages and not others indicates the fact finder "measured carefully" the damages issue). Thus, it appears from the record that the trial court did more than "simply pick a

22

number and put it in the blank." *See Saenz*, 925 S.W.2d at 614. The evidence is sufficient to support the trial court's implied finding that $2,500 would fairly and reasonably compensate Jackson for her mental anguish. *See Pulley v. Milberger*, 198 S.W.3d 418, 427 (Tex. App.—Dallas 2006, pet. denied) ("When the trial court's express findings of fact do not address all grounds for recovery or defenses, an appellate court implies findings of fact regarding the omitted grounds or defenses that are needed to support the judgment.").

After reviewing all of the evidence in the light favorable to the trial court's findings, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not, we hold that there is legally sufficient evidence to support the trial court's finding that Jackson should recover $2,500 in mental anguish damages and the trial court's implied finding that $2,500 would fairly and reasonably compensate Jackson for her mental anguish. Likewise, after considering and weighing all of the evidence pertinent to the trial court's findings, we cannot say that the evidence supporting the trial court's findings is so weak or contrary to the overwhelming weight of all the evidence that they should be set aside and a new trial ordered. We overrule Appellants' fourth issue.

## VIII. Treble Damages and Attorney's Fees

Appellants argue in their fifth issue that Jackson cannot recover treble damages or attorney's fees because she did not present sufficient evidence of economic or mental anguish damages. However, because we overruled

23

Appellants' second and fourth issues concerning the sufficiency of the evidence to support Jackson's economic and mental anguish damages, we overrule Appellants' fifth issue. *See* Tex. Bus. & Com. Code Ann. § 17.50(b)(1) (permitting a consumer to recover up to three times the amount of economic damages for intentional or knowing conduct); *see also id.* § 17.50(d) (requiring mandatory award of reasonable and necessary attorney's fees to prevailing consumer in action under DTPA).

## IX. Reasonableness of Attorney's Fees

In their sixth issue, Appellants contend the evidence is legally and factually insufficient to support the trial court's findings that Jackson should recover a total of $27,500 in attorney's fees.

The trial court awarded attorney's fees to Jackson in the amount of $4,000 against Avery and $16,000 against Norris. The trial court also awarded Jackson $7,500 in attorney's fees against Appellants in the event of an appeal to the court of appeals. Relying solely on *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545 (Tex. 2009), Appellants contend that the trial court's attorney's fee awards are unreasonable in light of the trial court's actual damage awards of $500 against Avery and $2,500 against Norris. Once trebled, the trial court's actual damage awards total $9,000.

In *Smith*, the landlord sued the guarantors of a shopping center lease for $215,391.50 in damages and sought $47,438.75 in attorney's fees. *Id.* at 546. The guarantors unsuccessfully objected to the landlord's attorney fee statements

as hearsay but did not otherwise challenge or contradict the landlord's evidence of attorney's fees. *Id.* The jury found the guarantors liable but awarded only $65,000 in damages and no attorney's fees. *Id.* The trial court entered judgment that the landlord receive $65,000 in damages, but it rendered judgment notwithstanding the jury's verdict that the landlord recover $7,500 in attorney's fees. *Id.* at 546–47. The court of appeals vacated the award of $7,500 in attorney's fees, rendered judgment that the landlord recover all of the $47,438.75 in attorney's fees it proved at trial, and held that the trial court abused its discretion by awarding only $7,500 in attorney's fees because the landlord presented uncontroverted evidence of its attorney's fees. *Id.* at 547.

The supreme court held that the fee of $47,438.75, "though supported by uncontradicted testimony, was unreasonable in light of the amount involved and the results obtained, *and in the absence of evidence that such fees were warranted due to circumstances unique to this case.*" *Id.* at 548 (emphasis added). The court held that the court of appeals erred by holding that the landlord proved entitlement to the entire fee as a matter of law, but it also stated that although the jury "could have rationally concluded that, in light of the amount involved and the results obtained, a reasonable fee award was less than the full amount sought, no evidence supported the jury's refusal to award any attorney's fees." *Id.* The court continued, "*On retrial, the evidence may support a similar fee award, but that is a matter within the jury's purview.*" *Id.* (emphasis added).

25

*Smith* does not support Appellants' contention that the attorney's fees awarded to Jackson are unreasonable *solely* because they exceed the amount of actual damages awarded. Rather, we must consider the evidence Jackson presented to determine whether the attorney's fees awarded are reasonable in light of the factors set forth in rule 1.04 of the Texas Disciplinary Rules of Professional Conduct, which include "the amount involved and the results obtained" and the circumstances unique to this case. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (listing factors to consider in determining reasonableness of attorney's fee awards) (citing Tex. Disciplinary R. Prof. Conduct 1.04, reprinted in Tex. Gov't Code, tit. 2, subtit. G app. (State Bar Rules, art. X, § 9)); *see also Smith*, 296 S.W.3d at 548 (placing special emphasis on the factor concerning the amount involved and results obtained).

Jackson's attorney, Carol Wolfram, testified that she has been licensed in Texas since 1984, that she has extensive experience as a trial attorney, that she has practiced in North Texas and is familiar with trying cases in Denton County, and that her billing rate of $275 per hour is within the usual and customary range of hourly rates charged by attorneys with similar experience in the area. Ms. Wolfram also testified concerning the work that she performed in the case on Jackson's behalf, which included drafting pleadings; drafting, reviewing, and responding to discovery requests and responses; attending mediation; attending three depositions noticed by Appellants and a hearing on Appellants' motion for

26

continuance; preparing responses and attending a hearing on Appellants' motion for summary judgment; and preparing for and attending trial. She testified that she adjusted her time downward so that the actual fee invoices sent to Jackson do not reflect all of the time she spent working on the case; she estimated that she reduced her bills by fifteen to twenty percent.[10] Ms. Wolfram testified that she segregated the time spent solely on the fraud cause of action and that she has not charged for that time. Ms. Wolfram testified that, based on her hourly rate of $275 per hour, $29,000 is a reasonable and necessary fee for services rendered through trial and that $7,500 to $8,000 is a reasonable fee for an appeal to the court of appeals. Counsel for Appellants also testified concerning the attorney's fees incurred by his clients; he testified that a fee award to his clients in the amount of $30,000 was reasonable for his clients' $1,000 counterclaim against Jackson.

Jackson, through her attorney, presented evidence of the time and labor involved in prosecuting the case on her behalf, the fee customarily charged in the locale for similar legal services, her experience and ability to perform the legal services, and the attorney's fees made necessary due to Appellants' litigation strategy such as noticing three depositions and filing motions for continuance and summary judgment. See *Arthur Andersen & Co.*, 945 S.W.2d at 818 (listing factors for determining reasonableness of attorney's fee awards). Indeed,

---

[10]The fee invoices sent to Jackson were admitted into evidence without objection.

Norris's and Avery's counsel testified that $30,000 was a reasonable fee for the services that he and his law firm rendered in the case in attempting to recover on Avery's $1,000 counterclaim. Considering the evidence in light of the factors set forth in rule 1.04, we hold that this evidence is sufficient to support the trial court's award of $27,500 in attorney's fees to Jackson, even though the attorney's fees exceed the actual damage awards. *See Bank of Tex. v. VR Elec., Inc.*, 276 S.W.3d 671, 685 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (affirming $30,000 attorney fee award in case involving $7,035.26 in actual damages); *Cordova v. Sw. Bell Yellow Pages, Inc.*, 148 S.W.3d 441, 445–49 (Tex. App.—El Paso 2004, no pet.) (affirming fee award of $18,007 in case involving $7,092.18 in actual damages).

After reviewing all of the evidence in the light favorable to the trial court's findings, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not, we hold that there is legally sufficient evidence to support the trial court's findings that Jackson should recover a total of $27,500 in attorney's fees from Appellants. Likewise, after considering and weighing all of the evidence pertinent to the trial court's findings, we cannot say that the evidence supporting the trial court's findings is so weak or contrary to the overwhelming weight of all the evidence that they should be set aside and a new trial ordered. We overrule Appellants' sixth issue.

## X. Conclusion

Having overruled each of Appellants' six issues, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL:  GARDNER and MEIER, JJ.; and DIXON W. HOLMAN (Senior Justice, Retired, Sitting by Assignment).

DELIVERED:  October 28, 2010