

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-16-00050-CV

———————————————

RICHARD SEIM AND LINDA SEIM, Appellants

V.

ALLSTATE TEXAS LLOYDS AND LISA SCOTT, Appellees

On Appeal from the 141st District Court
Tarrant County, Texas
Trial Court No. 141-270531-14

Before Walker, Meier, and Gabriel, JJ.
Memorandum Opinion on Remand by Justice Walker

## MEMORANDUM OPINION ON REMAND

## I. INTRODUCTION

The Texas Supreme Court reversed our judgment affirming the trial court's summary judgment for Appellees Allstate Texas Lloyds and Lisa Scott and against Appellants Richard Seim and Linda Seim and remanded this appeal to us with instructions to determine whether—based on issues we did not previously reach—the trial court's summary judgment for Allstate and Scott may be affirmed on other grounds. *See Seim v. Allstate Tex. Lloyds (Seim II)*, 551 S.W.3d 161, 166 (Tex. 2018)[1] ("Allstate has argued to this Court that even if its objections were waived, it is still

---

[1]After the Texas Supreme Court issued its opinion, an amicus curiae submission was tendered to the supreme court asserting that the trial court's summary judgment was not final and that, accordingly, the Texas Supreme Court and this court lacked jurisdiction over it. The amicus curiae contended that the trial court's summary judgment was not final because it was not entitled to a presumption of finality, because it merely ruled on a motion for summary judgment, and because it did not contain a decretal that the Seims take nothing. But even without a presumption of finality, even though it merely granted a motion for summary judgment, and even though it contained no decretal language, the trial court's summary judgment actually did dispose of all remaining parties and claims; therefore, it is final. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001) (holding "[a] judgment that finally disposes of all remaining parties and claims, based on the record in the case, is final, regardless of its language"). The Seims are the only plaintiffs. Allstate and Scott are the only remaining defendants. Allstate and Scott expressly moved for summary judgment on all of the Seims' claims. Allstate and Scott's motion for summary judgment stated, "Defendants file this Motion for Summary Judgment *on all Plaintiffs' causes of action* arising from Defendants' handling of the Plaintiffs' claim for property damage arising from the August 13, 2013 storm." [Emphasis added.] The trial court's summary judgment order states that the trial court heard "Defendants Allstate Texas Lloyds and Lisa Scott's No-Evidence and Traditional Motion for Summary Judgment *as to all claims asserted by the Plaintiff[s]*" and granted it. Because the trial court's summary judgment order disposed of all parties and all claims pending before the trial court, it is a final judgment. *See id.*

2

entitled to summary judgment on other grounds. But we will leave those grounds for the court of appeals to consider."). Two of the grounds for summary judgment that Allstate and Scott asserted in the trial court, in this court, and in the Texas Supreme Court as a basis for affirming the summary judgment in their favor—even if they did waive their objections to the affidavit of the Seims' expert Neil B. Hall—are (1) that no evidence exists that the damage sustained to the Seims' home in the August 13, 2013 storm was caused by or attributable solely to a covered peril (wind or hail making an opening in the roof as a result of the August 2013 storm) as opposed to prior storms, thermal cracking, or other causes and, alternatively, (2) that no evidence exists segregating the damages to the Seims' home resulting from the alleged covered peril of the August 2013 storm from damages resulting from the uncovered perils of previous storms in which the Seims' home had sustained damage, thermal cracking, and other causes.[2] We agree. Accordingly, we will affirm the trial court's summary judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Allstate provided the Seims with a homeowners' policy covering their property in Bedford, Texas. The policy period began on April 27, 2013, and ended on April 27, 2014. On August 28, 2013, the Seims notified Allstate that their home had been

---

[2]Allstate and Scott raised additional grounds for affirmance of the trial court's summary judgment, but because we affirm on these grounds, we need not address the other ones. *See* Tex. R. App. P. 47.1.

damaged by a storm that had occurred earlier in August, on or about August 13, 2013.

Scott, an adjuster for Allstate, inspected the Seims' property on or about September

10, 2013. Scott testified at her deposition that the Seims' property had some interior

water damage, but the roof did not have any wind or hail damage. Scott further

testified that in order for the interior water damage to be covered under the Seims'

policy, "there ha[d] to be an opening in the roof [caused] by wind or hail . . . and [the

Seims] did not have that."[3] Allstate denied the Seims' claim on September 10, 2013.

*See Seim v. Allstate Tex. Lloyds (Seim I)*, No. 02-16-00050-CV, 2017 WL 1738028, at *1

(Tex. App.—Fort Worth May 4, 2017) (mem. op. on en banc reconsideration), *rev'd*,

551 S.W.3d 161 (Tex. 2018).

The sequencing of the Seims' amended pleadings and their content is pertinent

to our disposition of this appeal; it is as follows:

- February 11, 2014—The Seims filed suit against Allstate. They pleaded causes of action against Allstate based on Allstate's handling of claim number 0297959876, which was submitted by the Seims against their homeowners' policy for damages to their home arising from a severe storm that had passed through the Bedford area on August 13, 2013.

- April 15, 2014—The Seims filed a first amended petition. They pleaded causes of action against Allstate based on Allstate's handling of claim number 0102779105, which was submitted by the Seims against their homeowners' policy for damages to their home arising from a severe storm that had passed through the Bedford area on April 13,

---

[3]The policy states that as to the covered peril of "Windstorm, Hurricane[,] and Hail," the policy does not cover "loss caused by rain . . . unless the direct force of wind or hail makes an opening in the roof or wall and the rain . . . enters through this opening and causes the damage."

4

2007. The Seims' first amended petition did not predicate any of the their pleaded claims on the August 13, 2013 storm alleged in their original petition or upon Allstate's handling of that claim.

• May 6, 2014—The Seims filed a second amended petition, adding Scott as a defendant. They pleaded causes of action against Allstate based on Allstate's handling of claim numbers 0102779105, 0112511373, and 0245019815, which were submitted by the Seims against their homeowners' policy for damages to their home arising from severe storms that had passed through the Bedford area on, respectively, April 13, 2007; April 9, 2008; and May 8, 2012. The Seims' second amended petition did not predicate any of the their pleaded claims on the August 13, 2013 storm alleged in their original petition or upon Allstate's handling of that claim.

At this point, Allstate and the individual defendants filed multiple motions for summary judgment.[4]

• October 28, 2015—The Seims filed a third amended petition, pleading causes of action against Allstate and Scott based on their handling of claim number 0297959876, which was submitted by the Seims against their homeowners' policy for damages to their home arising from a

_____

[4]They filed a joint motion for partial summary judgment on limitations grounds as to the Seims' claims arising from the alleged *April 13, 2007* and *April 9, 2008* storm damage to their home. The individuals sued by the Seims—which at this point in the proceedings included defendants Chad Golseth, Maria Golseth, and Scott—also filed a no-evidence and traditional motion for summary judgment as to the Seims' claims arising from the alleged *May 8, 2012* damage to their home. Concerning Scott, the only one of these individual defendants not subsequently nonsuited by the Seims, the motion for summary judgment alleged, and Scott's supporting affidavit stated, that Scott was not involved in any manner with the Seims' purchase of the Allstate policy at issue at the time of the *April 13, 2007*, *April 9, 2008*, or *May 8, 2012* storms; that the only claim adjusted by Scott was reported by the Seims as having occurred on August 13, 2013; and that Scott had no contact with the Seims prior to adjusting that August 13, 2013 claim. Finally, Allstate also filed a traditional and no-evidence motion for summary judgment on the Seims' claims arising from the alleged *May 8, 2012* damage to their home on the ground that Allstate had timely and properly assessed and paid that claim.

5

severe storm that had passed through the Bedford area on *August 13, 2013*. The Seims' third amended petition deleted all references to all causes of action against Allstate or Scott arising from claim numbers 0102779105, 0112511373, and 0245019815, which were submitted by the Seims against their homeowners' policy for damages to their home arising from severe storms that had passed through the Bedford area on, respectively, *April 13, 2007*, *April 9, 2008*, and *May 8, 2012*. The Seims' third amended petition explained the deletion of the other claims, stating, "Previous to August 13, 2013, Plaintiffs had submitted claims to Allstate for damage to the roof. Plaintiffs made the repairs as instructed by Allstate and had no issues of water ingress during the twelve months leading up to the August 13, 2013 storm."

Because the Seims' live, third amended petition deleted and omitted all claims arising from any alleged storms or conduct by Allstate or Scott other than the August 13, 2013 storm and claim, the trial court did not conduct a hearing or rule on Allstate and Scott's first three motions for summary judgment. Instead, Allstate and Scott filed a combined no-evidence and traditional fourth motion for summary judgment as to the causes of action asserted in the Seims' third amended petition.[5] After a hearing, the trial court granted the combined motion without stating the reasons.

## III. STANDARD OF REVIEW

We review the rendition of a no-evidence motion for summary judgment de novo. *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017). In conducting our review, we apply the same legal sufficiency standards used to review a directed verdict. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). We consider the evidence in the light most favorable to the nonmovant, indulging every reasonable

---

[5]This motion incorporated by reference the summary-judgment evidence attached to each of Allstate and Scott's previous motions for summary judgment.

6

inference and resolving any doubts against the motion. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *Gish*, 286 S.W.3d at 310. We credit evidence favorable to the nonmovant if a reasonable factfinder could, and disregard contrary evidence and inferences unless a reasonable factfinder could not. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact on each of the challenged elements, then a no-evidence summary judgment is not proper. *Smith*, 288 S.W.3d at 424.

When, as here, a summary judgment does not specify or state the grounds on which the trial court relied, the nonmovant on appeal must negate any grounds on which the trial court could have relied, and we will affirm the summary judgment on appeal if any of the grounds presented in the motion is meritorious. *See Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex. 1995); *Sotelo v. Stewart*, 281 S.W.3d 76, 80–81 (Tex. App.—El Paso 2008, pet. denied); *Mellon Serv. Co. v. Touche Ross & Co.*, 17 S.W.3d 432, 435 (Tex. App.—Houston [1st Dist.] 2000, no pet.). In other words, when a summary judgment does not state the grounds on which it is based, a nonmovant is required to show that each ground alleged in the motion for summary judgment was insufficient to support the summary judgment. *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

## IV. THE TRIAL COURT PROPERLY GRANTED ALLSTATE AND SCOTT'S NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT

### A. The Law

#### 1. Concerning conclusory expert opinions

The Texas Rules of Civil Procedure require that affidavits submitted as summary-judgment evidence set forth facts that would be admissible in evidence.[6] *See* Tex. R. Civ. P. 166a(f); *Ashton v. KoonsFuller, P.C.*, No. 05-16-00130-CV, 2017 WL

---

[6]On petition for review, the Texas Supreme Court held that Allstate and Scott had waived their objections to formal defects in Hall's *affidavit*, including the lack of a jurat, by failing to obtain a ruling on those objections so that Hall's affidavit providing the date of the alleged loss constituted competent summary-judgment evidence of that fact. *See Seim II*, 551 S.W.3d at 163. Although the supreme court limited its holding to Hall's affidavit and did not address Hall's unsworn, stand-alone, expert reports, we will assume for purposes of this opinion that Hall's reports are not incompetent summary-judgment evidence even though they are not sworn; that is, we treat Hall's reports as equivalent to sworn testimony. *But see* Judge David Hittner & Lynne Liberato, *Summary Judgments in Texas: State and Federal Practice*, 52 Hous. L. Rev. 773, 856 (Winter 2015) ("Written reports from experts, unless sworn to, are not proper summary[-]judgment evidence."); *Kolb v. Scarbrough*, No. 01-14-00671-CV, 2015 WL 1408780, at *4 (Tex. App.—Houston [1st Dist.] Mar. 26, 2015, no pet.) (mem. op.) ("Because the expert report is not verified, it is not competent summary-judgment evidence and cannot defeat the Scarbroughs' no-evidence motion."); *Bayou City Fish Co. v. S. Tex. Shrimp Processors, Inc.*, No. 13-06-00438-CV, 2007 WL 4112003, at *3 (Tex. App.—Corpus Christi Nov. 20, 2007, no pet.) (mem. op.) ("If, therefore, a statement is unauthenticated, unsworn, and unaccompanied by an affidavit, it is not competent summary[-]judgment evidence."); *Moron v. Heredia*, 133 S.W.3d 668, 671 (Tex. App.—Corpus Christi 2003, no pet.) ("The only document produced by appellants in response to appellee's motion for summary judgment was McAllister's report. This document was neither verified nor accompanied by an affidavit. As such, it did not constitute admissible evidence."); *Carrillo v. Hirsch*, No. 13-00-00280-CV, 2001 WL 1002198, at *4 n.4 (Tex. App.—Corpus Christi Aug. 31, 2001, pet. denied) (not designated for publication) (stating that "[a]n expert report does not constitute summary[-]judgment proof absent a jurat, which indicates that the statement's contents were sworn to be true before a notary").

1908624, at *2 (Tex. App.—Dallas May 10, 2017, no pet.) (mem. op.) (citing *Rabe v. Dillard's Inc.*, 214 S.W.3d 767, 769 (Tex. App.—Dallas 2007, no pet.)). "Expert opinions must be supported by facts in evidence, not conjecture." *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 729 (Tex. 2003); *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999); *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991). That is, an expert's opinions cannot rest on the expert's subjective interpretation of the facts. *See TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 239 (Tex. 2010). Conclusory statements in an affidavit unsupported by facts are insufficient to defeat summary judgment. *CA Partners v. Spears*, 274 S.W.3d 51, 63 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); *1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 27 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (citing *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997)). A conclusory statement is one that does not provide the underlying facts to support the conclusion. *CA Partners*, 274 S.W.3d at 64 (citing *1001 McKinney Ltd.*, 192 S.W.3d at 27); *see also Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999) (stating that a witness's affidavit is conclusory if it fails to explain the basis of the witness's statements to link his conclusions to the facts).

A conclusory statement by an expert witness is insufficient to raise a question of fact to defeat summary judgment. *Elizondo v. Krist*, 415 S.W.3d 259, 264 (Tex. 2013) (explaining that "in this case, an attorney-expert, however well qualified, cannot defeat summary judgment if there are fatal gaps in his analysis that leave the court to take his word that the settlement was inadequate"); *IHS Cedars Treatment Ctr. v. Mason*,

9

143 S.W.3d 794, 803 (Tex. 2004) (explaining that "[a] conclusory statement [in an affidavit] of an expert witness is insufficient to create a question of fact to defeat summary judgment"); *McIntyre v. Ramirez*, 109 S.W.3d 741, 749–50 (Tex. 2003) (same). Expert testimony fails if there is "simply too great an analytical gap between the data and the opinion proffered." *Elizondo*, 415 S.W.3d at 264 (citing *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 726 (Tex. 1998)).

A party may complain that conclusory opinions are legally insufficient evidence even if the party did not object to the admission of the testimony. *See Burrow*, 997 S.W.2d at 235; *see also Elizondo*, 415 S.W.3d at 264 ("'Bare, baseless opinions' constitute no evidence even if there is no objection to their admission in evidence."). A conclusory statement in an affidavit is a substantive defect that can be raised for the first time on appeal. *Ordonez v. Solorio*, 480 S.W.3d 56, 63–64 (Tex. App.—El Paso 2015, no pet.).

## 2. Concerning the doctrine of concurrent causes

In an insured's breach-of-contract suit based on an insurance policy, "the insured has the burden of establishing coverage under the terms of the policy." *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015) (citing *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010)). An insured is not entitled to recover under an insurance policy unless she proves her damages are covered by the policy. *Emp'rs Cas. Co. v. Block*, 744 S.W.2d 940, 944 (Tex. 1988), *disapproved on other grounds by State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696

10

(Tex. 1996); *Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 303 (Tex. App.—San Antonio 1999, pet. denied). So the insured bears the burden to show that a policy is in force and that the risk comes within the policy's coverage. *See Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 782 (Tex. 2008).

When covered and noncovered perils combine to create a loss, the insured is entitled to recover only that portion of the damage caused solely by the covered peril and must present some evidence to allow the jury to allocate the damage attributable to the covered peril. *Wallis*, 2 S.W.3d at 303–04; *see also Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160, 163 (Tex. 1971); *All Saints Catholic Church v. United Nat'l Ins. Co.*, 257 S.W.3d 800, 803–04 (Tex. App.—Dallas 2008, no pet.); *U.S. Fire Ins. Co. v. Matchoolian*, 583 S.W.2d 692, 693–94 (Tex. Civ. App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.). The doctrine of concurrent causes is not an affirmative defense or an avoidance issue; instead, it is a rule embodying the basic principle that insureds are not entitled to recover under their insurance policies unless they prove the damage is covered by the policy. *Allison v. Fire Ins. Exch.*, 98 S.W.3d 227, 258 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.). Because the insured can recover only for covered events, the burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured carries the burden of proof. *State Farm Fire & Cas. Co. v. Rodriguez*, 88 S.W.3d 313, 321 (Tex. App.—San Antonio 2003, pet. denied), *abrogated on other grounds by Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20 (Tex. 2008). Although a plaintiff is not required to

11

establish the amount of his damages with mathematical precision, there must be some reasonable basis upon which the jury's finding rests. *Rodriguez*, 88 S.W.3d at 320; *see also Paulson v. Fire Ins. Exch.*, 393 S.W.2d 316, 319 (Tex. 1965) ("It is essential that the insured produce evidence [that] will afford a reasonable basis for estimating the amount of damage or the proportionate part of damage caused by a risk covered by the insurance policy."). The insured's failure to segregate damages resulting from covered and noncovered perils is fatal to her recovery. *Allison*, 98 S.W.3d at 259; *see also Kelly v. Travelers Lloyds of Tex. Ins. Co.*, No. 14-05-00825-CV, 2007 WL 527911, at *3 (Tex. App.—Houston [14th Dist.] Feb. 22, 2007, no pet.) (mem. op.).

## B.  The Parties' Positions

The Seims' homeowners' policy with Allstate—concerning the Coverage A (Dwelling) portion in Section I entitled "Perils Insured Against"—provides:

> We insure against physical loss to the property described in Coverage A (Dwelling) . . . caused by a peril listed below, unless the loss is excluded in Section I Exclusions.
>
> . . . .
>
> 3.  **Windstorm, Hurricane[,] and Hail.**
>
> This peril does not cover:
>
> . . . .
>
> b.  loss caused by rain, snow, sand[,] or dust, whether or not driven by wind, unless the direct force of wind or hail makes an opening in the roof or wall and the rain, snow, sand[,] or dust enters through this opening and causes the damage.

Scott's denial of the Seims' claim number 0297959876 based on the alleged August 2013 storm states that she denied this claim after inspecting the Seims' roof and finding no wind and hail damage and no opening created by wind or hail that could have allowed water to enter the residence. Scott noted that the Seims had filed previous claims for damages to their home from storms occurring on April 13, 2007; April 9, 2008; and May 8, 2012, and that she was not involved in the adjustment of those claims. Allstate and Scott pleaded that "Plaintiffs' claimed damages resulted from prior claims that have been paid."

Allstate and Scott asserted in their traditional and no-evidence fourth motion for summary judgment, and assert on appeal, that no evidence exists—as to the Seims' breach-of-contract claim—that any damage sustained to the Seims' home was caused by or attributable to a covered peril (wind or hail making an opening in the roof as a result of the August 2013 storm) as opposed to prior storms, thermal cracking, or other causes. They alternatively argued that even if some evidence exists of damage from the covered peril of wind or hail damage that had made an opening into the Seims' home in August 2013, nonetheless, the Seims presented no evidence affording a reasonable basis for estimating the amount of that damage or the proportional part of that damage (caused by the covered loss) as opposed to damages caused by prior storms (outside the current policy's covered period), thermal cracking, or other noncovered perils.

13

The Seims, on the other hand, argue that Hall's initial and supplemental reports raise a fact issue on whether the damages to their home alleged to have occurred on August 13, 2013, were caused by a covered peril because Hall's initial report and his supplemental report "catalog the damage and, especially in his Supplemental Report, explain[] how the damage to the Seim property is tied to the 2013 storm and not to prior events." The Seims do not respond to Allstate and Scott's contention that they failed to segregate damages except to contend that "[t]he record contains ample evidence from which a jury could reasonably conclude that the Seims suffered a covered loss during the policy period" and that "[e]xpert allocation of damages . . . is not . . . necessarily required; circumstantial evidence can suffice," citing *Lyons v. Millers Cas. Ins. Co.*, 866 S.W.2d 597, 601 (Tex. 1993).

## C. Analysis

### 1. Hall's initial report and supplemental report opining that the damage to the Seims' home "resulted *solely* from the August 9, 2013 windstorm"[7] are conclusory and constitute no evidence

Hall's initial report and his supplemental report are both based on the same July 19, 2014 inspection that he made of the Seims' home and the alleged damage to it. Hall's initial report is dated August 16, 2014. It was generated when the Seims' second amended petition—pleading causes of action against Allstate based on

---

[7]The first mention of an August 9, 2013 storm occurs in Hall's initial report, which states, "[A]lthough the date of loss was reported as August 13, 2013, four days prior on August 9, 2013, Dallas-Ft. Worth recorded a maximum wind speed of 60 mph."

14

Allstate's handling of claim numbers 0102779105, 0112511373, and 0245019815, which were submitted by the Seims against their homeowners' policy for damages to their home arising from severe storms that had passed through the Bedford area on, respectively, April 13, 2007; April 9, 2008; and May 8, 2012—constituted the Seims' live pleading. Hall's initial report includes as attachments weather data, satellite images and aerial photos, and site inspection photos. In his initial report, Hall recites that "[p]ending further analysis, five hail events between April 2007–June 2012 are candidate dates for which impacting could have damaged the concrete tiles on the Seim residence." He concluded and opined that

> [w]ithout reviewing all the file material for each individually reported date of loss [April 13, 2007; April 9, 2008; and May 8, 2012], **it is difficult to determine what part and how much of the roof assembly and radiant barrier were damaged by wind, hail[,] and/or the ensuing penetration of water for each of the reported weather events. However, clearly some of the damage described by Mrs. Seim occurred prior to the August 13, 2013 date of loss.** Based on the available information**, it is my opinion that the Insurance Company did not properly investigate and identify the nature, cause[,] and extent of the damage** claimed by Mrs. Seim, nor did they ever present to Mrs. Seim a code-compliant protocol for mitigating the full extent of damages. [Emphasis added.]

Hall's supplemental report was then prepared on November 24, 2016. It was written after the Seims had filed their third amended petition, deleting all causes of action against Allstate or Scott purportedly arising from claim numbers 0102779105, 0112511373, and 0245019815, which were submitted by the Seims against their homeowners' policy for damages to their home arising from severe storms that had

passed through the Bedford area on, respectively, April 13, 2007; April 9, 2008; and May 8, 2012, and pleaded only causes of action against Allstate and Scott based on claim number 0297959876, which was submitted by the Seims against their homeowners' policy for damages to their home arising from severe storms that had passed through the Bedford area on August 13, 2013. Hall's supplemental report again relies on his inspection of the Seims' residence on July 19, 2014. In his supplemental report, however, Hall changes his opinion as to the date of the storm causing the damage to the Seims' home. In his supplemental report, after listing April 13, 2007; January 24, 2012; May 7, 2012, as dates of losses Hall explains:

> It is my understanding from Mrs. Seim that repairs were made based on the damage identified by the Allstate adjusters after each reported [date of loss].
>
> . . . .
>
> **The damage I observed t**o the interior, the radiant barrier between the rafters and battens, and the concrete tiles **resulted solely from the August 9, 2013 windstorm.** [Emphasis added.]

The Seims argue that they met their burden of coming forward with some evidence in support of their breach-of-contract claim raising a genuine fact issue as to whether the damages to their home are covered by their policy with Allstate; specifically, they rely on Hall's opinion expressed in his supplemental report that the damages were caused *solely* by the August 2013 storm. But to reach this opinion, Hall omitted from his supplemental report certain facts that he had previously referenced in his initial report as supporting his causation opinion that "clearly some

16

of the damage . . . occurred prior to August 13, 2013." And he included facts directly contrary to those stated in his initial report. For example, in Hall's supplemental report he stated that "Mrs. Seim reported new leaks after August 13, 2013." And he stated that "Ms. Scott found no wind or hail damage on the roof [when she inspected it after the Seims' August 2013 claim]. If this is correct, necessarily the Seims repaired all of the previous damage identified by Allstate adjusters in response to the 04/13/2007; 01/24/2012; and 05/08/2012 claims." Thus, Hall assumes that the Seims "repaired all of the previous damage identified by Allstate adjusters in response to the 04/13/2007; 01/24/2012; and 05/08/2012 claims," so no wind or hail roof damage existed at the time of Scott's September 2013 inspection. Despite this assumption—that no wind or hail roof damage existed on the Seims' roof at the time of Scott's inspection in September 2013, including any opening in the roof made by wind or hail—Hall concludes and opines that the damage he observed to the "interior . . . [and] the radiant barrier between the rafters and battens" of the Seims' home resulted from the August 2013 storm. Hall offers no explanation for how such interior damage could have resulted from a covered peril—the direct force of wind or hail making an opening in the roof through which rain entered and caused damage in August 2013—without any evidence of damage to the roof from the alleged wind and hail occurring from the storm in August 2013. And in his initial report, Hall admitted that he did not review the file material for each of the prior losses reported by the Seims and explained that without such a review, "it is difficult to determine what part

17

and how much of the roof assembly and radiant barrier were damaged by wind, hail[,] and/or the ensuing penetration of water for each of the reported weather events." Yet, in Hall's supplemental report, he opines that—even without the reviewing the file material for each of the prior losses, which he previously deemed necessary—all damage that he observed to the "interior . . . [and] the radiant barrier between the rafters and the battens . . . resulted solely from the August 9, 2013 windstorm."[8]

Ultimately, Hall's report and its supplement merely contain bare, baseless (and contradictory) opinions that fail to link his conclusions to the facts. *See Elizondo*, 415 S.W.3d at 264. Indeed, Hall draws the opposite conclusions from the same facts. A conclusory opinion or statement like Hall's opinion and statement that all of the damage to the Seims' home resulted **solely** from the August 2013 storm is insufficient to create a question of fact—that is, constitutes no evidence—as to whether the damage to the Seims' home did result solely from the August 2013 storm as opposed to partially from prior storms, thermal cracking, or other causes. *See id.*; *see also, e.g.*, *McIntyre*, 109 S.W.3d at 749 (conclusory statement of expert witness is insufficient to create question of fact to defeat traditional summary judgment); *Sanchez v. Roberts Truck Ctr. of Tex., LLC*, No. 07-17-00213-CV, 2018 WL 4907533, at *4 (Tex. App.—

---

[8]Based on these conflicts alone, the trial court could have concluded that Hall's report and its supplement failed to raise a genuine issue of fact on whether the Seims' alleged damages are covered by their policy with Allstate; under Texas Rule of Civil Procedure 166a(c), a trial court may conclude that a party does not raise a genuine fact issue by submitting sworn testimony that materially conflicts with the same witness's prior sworn testimony, unless there is a sufficient explanation for the conflict. *See Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 87 (Tex. 2018).

Amarillo Oct. 9, 2018, no pet. h.) (mem. op.) (affirming no-evidence summary judgment because plaintiff's expert's affidavit lacked factual link between evidence and expert's opinion); *Barnett v. Schiro*, No. 05-16-00999-CV, 2018 WL 329772, at *6 (Tex. App.—Dallas Jan. 9, 2018, pet. filed) (mem. op.) (affirming no-evidence summary judgment because plaintiff's expert's affidavit failed to bridge "analytical gap" between his opinion and the data relied upon and therefore constituted no evidence); *Jos. A. Bank Clothiers, Inc. v. Cazzola Plumbing, Inc.*, No. 03-04-00198-CV, 2005 WL 1363995, at *4–5 (Tex. App.—Austin June 9, 2005, no pet.) (mem. op.) (same). Viewing the summary-judgment evidence in the light most favorable to the Seims, no evidence exists that the damage sustained to the Seims' home was caused by or attributable solely to a covered peril (wind or hail making an opening in the roof as a result of the August 2013 storm) as opposed to prior storms, thermal cracking, or other causes. Accordingly, we hold that the trial court did not err by granting summary judgment to Allstate and Scott on the Seims' breach-of-contract claim.

## 2. Alternatively, no evidence exists segregating damages attributable to the August 2013 storm from the damages attributable to the other storms.

Alternatively, to the extent that Hall's reports may raise a genuine issue of material fact as to whether the August 2013 storm may have combined with uncovered perils—such as the prior storms that the Seims had previously pleaded, thermal cracking, or other causes—the doctrine of concurrent causation was triggered. *See Block*, 744 S.W.2d at 944; *Wallis*, 2 S.W.3d at 303. Because the Seims

19

can recover only for damages, if any, resulting from the August 2013 storm, they bore the burden of segregating the damage attributable solely to that event from the damage caused by noncovered perils such as the prior storms, thermal cracking, or other causes. *See Rodriguez*, 88 S.W.3d at 321.

The Seims failed to produce any summary-judgment evidence segregating the damage attributable to the allegedly covered peril (the August 2013 storm) from the uncovered perils of the prior storms, claims previously pleaded by the Seims, or thermal cracking. This is fatal to their recovery. *See, e.g.*, *Paulson*, 393 S.W.2d at 316; *Kelly*, 2007 WL 527911, at *3; *Allison*, 98 S.W.3d at 259; *see also Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) (holding that "[b]ecause Lowen Valley has failed to meet its burden to show what portion, if any, of the claimed [hail] damage occurred during the coverage period [as opposed to during prior hailstorms before the policy period], Lloyd's is entitled to summary judgment"); *State Farm Lloyds v. Kaip*, No. 05-99-01363-CV, 2001 WL 670497, at *3 (Tex. App.—Dallas June 15, 2001, pet. denied) (op. on reh'g, not designated for publication) (reversing jury verdict in roof-damage case because adjuster expert testified that "hail, wear and tear, deterioration, inherent defect, rain, and the way the shingles were laid all contributed to the damage" to the claimant's roof, but the jury was not given the opportunity to consider whether excluded perils caused a portion of the loss); *Allison v. Allstate Tex. Lloyd's*, No. 4:16-CV-00979-O-BP, 2017 WL 4991108, at *5 (N.D. Tex. Oct. 16, 2017), *report and recommendation adopted*,

20

No. 4:16-CV-00979-O-BP, 2017 WL 4923899 (N.D. Tex. Oct. 31, 2017) (holding that "failure to allocate damages between those that resulted from covered perils and those that did not is fatal to Allison's claim. Accordingly, summary judgment should be granted to Allstate on the breach[-]of[-]contract claim").

The Seims' reliance on *Lyons* to support their argument—that "[e]xpert allocation of damages . . . is not . . . necessarily required; circumstantial evidence can suffice"—is unavailing because the facts in *Lyons* make that case inapplicable here. In *Lyons*, the insureds claimed damage to exterior brick veneer and an outside back staircase from a windstorm. 866 S.W.2d at 598. The insurance company claimed the damage had occurred from foundation settling. *Id.* A jury found that one-quarter of the structural damage to the house was attributable to the windstorm; that three-quarters was attributable to settlement of the structure; and that $25,000 was the reasonable cost to repair the residence. *Id.* at 599. The supreme court held that Golda Lyons's testimony that she heard something banging on the outside of her house during the storm and later found the cracked and loose brick veneer and out-of-kilter staircase, along with her and her neighbors' testimony that the brick veneer and staircase were visibly damaged after the storm, "supports the jury's finding that Lyons'[s] damage was caused in part by the wind." *Id.* at 601. The supreme court held, "The testimony of Lyons and her neighbors that there was no preexisting damage to the staircase or brick veneer constituted some evidence of the extent of damage attributable solely to the windstorm." *Id.* Here, there is no evidence that the

21

Seims' roof was visibly damaged after the August 2013 storm in a way that it was not before. There is no evidence that the interior and radiant barrier between the rafters and battens was visibly damaged after the August 2013 storm in a way that it was not before. Although Mrs. Seim stated that she "noticed new leaks" after the August 2013 storm, a report of "new leaks" does not establish new damage. *See, e.g.*, *Cantu Servs., Inc. v. Gen. Star Indem. Co.*, No. 02-04-00403-CV, 2003 WL 22211544, at *2 (Tex. App.—Fort Worth Sept. 25, 2003, pet. denied) (mem. op.) (stating that insured reported new leaks that were found to be caused by old damage).

Viewing the summary-judgment evidence in the light most favorable to the Seims, no evidence exists segregating the damages the Seims claim resulted from the alleged covered peril of the August 2013 storm from damages resulting from the uncovered perils of previous storms in which the Seims' home had sustained damage. Accordingly, we alternatively hold that the trial court did not err by granting summary judgment to Allstate and Scott on the Seims' breach-of-contract claim.

## V. CONCLUSION

Allstate and Scott argue that because the Seims' breach-of-contract claim fails on no-evidence grounds, summary judgment was proper on their extracontractual claims. *See* Tex. Ins. Code Ann. § 542.060 (West 2009) (providing that in order to be liable for a prompt-payment violation, the insurer must also be "liable for a claim under an insurance policy"); *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010) ("When the issue of coverage is resolved in the insurer's favor, extra[]contractual

22

claims do not survive."); *Archer v. Med. Protective Co. of Fort Wayne, Ind.*, 197 S.W.3d 422, 426 (Tex. App.—Amarillo 2006, pet. denied) (holding insured could not maintain claims against insurer for unfair settlement practices because insurer had no liability for underlying policy claim); *Lundstrom v. United Servs. Ass'n-CIC*, 192 S.W.3d 78, 95–97 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (holding insurer was not liable for insureds' claims of bad faith, violations of the DTPA, and unfair insurance practices when the policy did not provide coverage for the claimed loss); *Toonen v. United Servs. Auto. Ass'n,* 935 S.W.2d 937, 941 (Tex. App.—San Antonio 1996, no writ) ("As a general rule, an insured does not have a bad faith claim in the absence of a breach of contract by the insurer."), *abrogated on other grounds by USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479 (Tex. 2018). We agree. Having determined that the trial court's summary judgment for Allstate and Scott on the Seims' breach-of-contract claim may be affirmed on the two grounds discussed above that were raised by Allstate and Scott, we affirm the trial court's judgment.

/s/ Sue Walker
Sue Walker
Justice

Delivered: November 8, 2018